# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08-CV-3397 |
| UAL CORPORATION, et al., | ) | Judge John W. Darrah |
| | ) | |
| Reorganized Debtors. | ) | Appeal from Case No. 02-B-48191 |
| | ) | Judge Eugene R. Wedoff |
| | ) | |

## SUPPLEMENTAL APPENDIX TO

## OPENING BRIEF OF IFTIKHAR NAZIR AND PHIL HOROWITZ IN OPPOSITION TO THE APPEAL OF UNITED AIR LINES, INC. AND IN SUPPORT OF NAZIR AND HOROWITZ'S CROSS-APPEAL

Harold L. Kaplan (ARDC No. 3125293)
Mark F. Hebbeln (ARDC No. 6272385)
Amy L. Strong (ARDC No. 6287493)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, Illinois 60654-5313
(312) 832-4500 (telephone)
(312) 832-4700 (facsimile)

Counsel for the Appellees and Cross-Appellants

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re* | ) Chapter 11 |
| | ) |
| **UAL CORPORATION**, *et al.*, | ) Case No. 02 B 48191 |
| | ) **(Jointly Administered)** |
| *Reorganized Debtors.* | ) |
| | ) Honorable Eugene R. Wedoff |
| | ) |
| | ) Hearing Date: December 19, 2007 |
| | ) Hearing Time: 10:00 a.m. |

## OBJECTION OF IFTIKHAR NAZIR AND PHIL HOROWITZ TO UNITED'S MOTION FOR ORDER HOLDING IFTIKHAR NAZIR AND HIS COUNSEL IN CONTEMPT OF COURT

# TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ................................................................1

II.    FACTUAL BACKGROUND .............................................3

III.   LEGAL ARGUMENT ....................................................5

      A.     The Standard for Imposing Civil Contempt Is Difficult to Satisfy and Sanctions Should Be Imposed Only in Extraordinary Circumstances ..........5

      B.     The Motion Does Not Comply with Local Bankruptcy Rule 9020-1 and Ought to Be Denied on That Basis Alone ...................................6

      C.     The Imposition of Sanctions Against Nazir and His Counsel Would Be Inappropriate and Not Serve Any Purpose, Particularly Given United's Conduct in, and Tacit Consent to, the California Litigation ..........6

           1.     United Has Vigorously Defended the California Litigation For Over a Year and a Half...............................................................6

           2.     United Should Be Deemed to Have Admitted That Employment Claims Arising Post-Petition Are Not Barred by the Plan and Confirmation Order by Its Failure to Take Any Action to Halt the California Litigation as Well as Scores of Lawsuits for Such Claims and is Estopped From Now Claiming Otherwise ......................................7

      D.     Nazir and His Counsel Did Not Violate, Intentionally or Otherwise, a Clear and Unambiguous Order of this Court and, Therefore, Sanctions Are Not Appropriate........................................................8

           1.     Nazir's Claims Were Not Discharged by the Plan and Confirmation Order Because (i) United Did Not Give Notice to Nazir of the Confirmation Hearing or of the Bar Date for Filing Administrative Claims and (ii) Even if Notice Had Been Received, it Would Not Have Been Clear that Nazir's Claims Required an Administrative Claim Filing ...............................................................8

           2.     Nazir's Claims Were Not Discharged By the Plan and Confirmation Order Because They Are for Intentional Misconduct or Gross Negligence, Which Are Specifically Excluded from Discharge by the Terms of the Plan and Confirmation Order ........................................14

-i-

TABLE OF CONTENTS
(continued)

                                                                          **PAGE**

3.    Even if, Despite the Lack of Notice, Nazir Was Required to Submit
      a Proof of Claim or an Administrative Claim, Nazir Should Be
      Deemed to Have Timely Satisfied Any Such Requirement by
      Making an Informal Claim, Consisting of Service on United of a
      State Administrative Complaint for Employment Discrimination ............ 17

**E.    In the Alternative, Nazir Should Be Granted Leave to File a Late
      Claim and Allowed to Continue to Litigate in State Court........................... 18**

**IV.    CONCLUSION........................................................................................................... 20**

**SA0003**

NOW COME IFTIKHAR NAZIR ("NAZIR") and PHIL HOROWITZ ("HOROWITZ"), by and through their undersigned counsel, and for their objection to United's Motion for an Order Holding Iftikhar Nazir and His Counsel in Contempt of Court for Proceeding with Litigation Against United (the "Motion"), states as follows:

## I.    INTRODUCTION

The relevant facts concerning the Motion are essentially undisputed. Far from justifying the imposition of sanctions on Nazir and Horowitz, these facts actually demonstrate that Nazir should be permitted to continue his litigation in California against United Air Lines, Inc. ("United") and one of its employees, Bernard Petersen.

On July 7, 2006, having exhausted his administrative remedies before the California Department of Fair Employment and Housing, Nazir filed a lawsuit in California Superior Court (the "California Litigation") against United and Mr. Petersen, alleging, among other things, Nazir's unlawful discharge and harassment by United because of his Muslim religion, color, ancestry and national origin. United's firing of Nazir occurred on May 9, 2005, which was after United's chapter 11 filing, but before its emergence from bankruptcy on February 1, 2006. For almost a year and a half -- and extending 21 months after its chapter 11 plan went effective -- United vigorously defended against the California Litigation. Among other things, it answered Nazir's complaint, engaged in extensive discovery, took or defended over 25 days of videotaped depositions, filed four unsuccessful discovery motions, unsuccessfully opposed a dozen discovery motions, and filed a motion for summary judgment. The pleadings files in the California Litigation are more than three feet thick. The trial on Nazir's complaint originally was scheduled to begin on December 10, 2007, but has since been continued to February 2008.

Then on November 9, 2007, United suddenly filed the Motion, in which it seeks to hold Nazir and his attorney, Horowitz, in contempt and recover all of its costs incurred in the California Litigation. Given the vigor with which United has defended the California Litigation on the merits, instead of seeking its dismissal on bankruptcy grounds at the outset, United's costs are likely to amount to hundreds of thousands of dollars.

The Motion alleges that Nazir has violated the discharge injunction in United's confirmed chapter 11 plan (the "Plan") and the order confirming the Plan (the "Confirmation Order"). Prior to filing the Motion, United's counsel did not even extend to Nazir or his counsel an advance phone call or letter to communicate its position and new tack that the California Litigation violated the discharge injunction. Rather, United unceremoniously filed the Motion and set it for hearing a mere five days later, serving Nazir and Horowitz so they received only two days' notice of the hearing. Shortly before the originally scheduled hearing date, United rescheduled the hearing date to December 19.

This Court should deny the Motion for several reasons. As an initial matter, United has not complied with the local rule of this Court concerning motions for contempt. More fundamentally, though, sanctions against Nazir and his counsel would serve no legitimate purpose and are not supportable, particularly given the policy behind limiting the imposition of sanctions and United's conduct in this matter, including its acceptance and prosecution of the California Litigation for well over a year. At the same time as Nazir and his counsel pursued the litigation in good faith, United actively defended and litigated Nazir's lawsuit in California for more than a year, incurring the fees and expenses it now complains of (as well as allowing Nazir and Horowitz to invest significant time and resources), without seeking to have the California Litigation dismissed on the basis that the California Litigation is barred by the Plan and Confirmation Order. Moreover, the California

- 2 -

Litigation is not clearly or actually barred by the Plan and Confirmation Order. Nazir was not given notice of the Plan confirmation hearing, the deadline to object to confirmation, or of the bar date for filing administrative claims. Nor would United's notice of the bar date for filing administrative claims nor the definition of "Administrative Claim" in the Plan have clearly instructed Nazir to file an administrative claim by an bar date if he had been given notice. If fact, it is unclear whether Nazir's claims even meet the definition of "Administrative Claim" contained in the Plan and, therefore, whether the Plan and Confirmation Order had any effect whatsoever on Nazir's claims. In sum, Nazir and his counsel have not violated an order of this Court that clearly and unambiguously prohibited their actions -- the first element that must be satisfied before imposing civil contempt. For all these reasons, the Court should decline to hold Nazir and his counsel in contempt, deny United's request for sanctions, and allow the California Litigation (now in its 18th month with a trial scheduled to begin in February) to be completed so as to liquidate Nazir's claim.

## II.    FACTUAL BACKGROUND[1]

United's Motion recites certain relevant facts, but also omits many. To assist the Court, set forth below is a timeline chart of the facts most relevant to the Motion and the California Litigation:

| Date | Event |
|------|-------|
| Pre-December 9, 2002 | Alleged Harassment of Nazir by United begins. |
| December 9, 2002 | United's chapter 11 filing. |
| Post-December 9, 2002 | Alleged Harassment of Nazir by United continues. |
| May 9, 2005 | Nazir fired by United. |

---

[1]    Certain of the facts recited in this Objection are also set forth in the Affidavit of Phil Horowitz, attached hereto as Exhibit A.

- 3 -

SA0006

| | |
|---|---|
| October 3, 2005 | Nazir files "Complaint of Discrimination" with California Department of Fair Employment and Housing. |
| October 5, 2005 | Nazir files "Notice of Charge of Discrimination" with EEOC. |
| October 5, 2005 | California Department of Fair Employment and Housing sends letter to United (Sr. VP Greg Hall) notifying United of Nazir's complaint.[2] |
| October 10, 2005 | Greg Hall receives California Department of Fair Employment and Housing letter sent on October 5, 2005 informing United of the filing of Nazir's discrimination complaint. |
| October 27-28, 2005 | Notice of confirmation hearing and deadline to object to Plan mailed by Poorman-Douglas. Nazir was not served with this notice. |
| October 28, 2005 | United (Megan Detzner) sends letter to California Dept. of Fair Employment and Housing acknowledging receipt of discrimination letter.[3] |
| January 20, 2006 | Confirmation Order entered. |
| January 27, 2006 | Notice of confirmation and administrative claims bar date mailed by Poorman-Douglas. Nazir was not served with this notice. |
| February 1, 2006 | Effective Date of chapter 11 plan. |
| March 3, 2006 | Bar Date for Administrative Claims (as defined in the chapter 11 plan). |
| July 7, 2006 | Nazir commences lawsuit against United in California Superior Court. |
| March 6, 2007 | United takes fourth and final day of Nazir's deposition. |
| November 9, 2007 | United files motion for contempt/sanctions against Nazir and Horowitz seeking unspecified amounts. |

---

[2]    Letter dated October 5, 2005 from California Department of Fair Employment & Housing to Greg Hall, attached hereto as Exhibit B.

[3]    Letter dated October 28, 2005 from Megan Detzner to California Department of Fair Employment & Housing, attached hereto as Exhibit C.

- 4 -

SA0007

As discussed below, these facts in conjunction with the relevant legal standards compel a denial of the Motion and a determination that Nazir should be permitted to continue the California Litigation.

### III.    LEGAL ARGUMENT

**A.    The Standard for Imposing Civil Contempt Is Difficult to Satisfy and Sanctions Should Be Imposed Only in Extraordinary Circumstances.**

A court's inherent power to hold a party in civil contempt may be exercised only when (i) the order the party allegedly failed to comply with is clear and unambiguous, (ii) the proof of noncompliance is clear and convincing, and (iii) the party has not diligently attempted in a reasonable manner to comply.  In re Chief Executive Officers Clubs, 359 B.R. 527, 535 (Bankr. S.D.N.Y. 2007).  See also King v. Allied Vision Ltd., 65 F.3d 1051, 1058 (2nd Cir. 1995); Monsanto Co. v. Haskel Trading, Inc., 13 F.Supp.2d 349, 363 (E.D.N.Y. 1998).  "Clear and unambiguous" means that the clarity of the order must be such that it enables the enjoined party "to ascertain from the four corners of the order precisely what acts are forbidden." Monsanto Co., 13 F. Supp.2d at 363; see also New York State National Organization for Women v. Terry, 886 F.2d 1339, 1351-52 (2nd Cir. 1989) (finding that the order could serve as the foundation for a contempt citation because it was sufficiently specific and clear as to what acts were proscribed to enable defendants to ascertain precisely what they could and could not do).

The moving party must establish contempt by "clear and convincing evidence." In re Musslewhite, 270 B.R. 72, 79 (S.D. Tex. 2000).  A court's decision to impose sanctions is subject to its discretion, id., and contempt is an extraordinary remedy that should be exercised cautiously and sparingly, In re Porter, 25 B.R.425, 428 (Bankr. D.Vt. 1982).  As discussed below, not only are the

- 5 -

SA0008

elements necessary to establish civil contempt not present here, but no legitimate purpose would be served by sanctioning Nazir or his counsel.

**B.    The Motion Does Not Comply with Local Bankruptcy Rule 9020-1 and Ought to Be Denied on That Basis Alone.**

As an initial matter, United has failed to comply with Local Rule of Bankruptcy Procedure 9020-1, which governs motions for contempt.  Local Rule of Bankruptcy Procedure 9020-1 provides, among other things, that:

> A contempt motion shall be accompanied by an affidavit describing the alleged misconduct on which it is based, stating the total of any monetary claim occasioned thereby, and listing each special item of damage sought to be recovered.

Local Bankruptcy Rule 9020-1.A(2).  The Motion is not accompanied by the affidavit required by Local Rule 9020-1.  For this reason alone, the Motion should be denied.

**C.    The Imposition of Sanctions Against Nazir and His Counsel Would Be Inappropriate and Not Serve Any Purpose, Particularly Given United's Conduct in, and Tacit Consent to, the California Litigation.**

**1.    United Has Vigorously Defended the California Litigation For Over a Year and a Half.**

Nazir commenced the California Litigation against United and Mr. Petersen on July 7, 2006.  Since that time, United has vigorously defended the California Litigation.  It has engaged in extensive discovery, including taking Nazir's deposition for four days, defended over 25 days of videotaped depositions, sent numerous interrogatories and requests for production of documents, and responded to many interrogatories and requests for production.  United produced over 25,000 pages of documents in response to Nazir's requests for production of documents.  United filed four mainly unsuccessful discovery motions in the California Litigation and unsuccessfully opposed about a dozen discovery motions.  The pleadings files alone in the California Litigation are more than three feet

- 6 -

thick.

Given this history of the California Litigation, the purposes of imposing sanctions would not be served here. First, sanctions are not necessary to enforce compliance with the Court's order. As discussed below, Nazir and his counsel are not violating any clear and express order of this Court. Furthermore, if the Court decides that they are, however unintentionally, violating one of its orders, they will certainly abide by the Court's ruling, subject to any appeal rights they may have. Second, sanctions should not be awarded to United to compensate it because United has not suffered unnecessary injuries or costs because of intentional contemptuous conduct. United has vigorously defended the California Litigation for almost a year and a half, apparently in the belief that Nazir's claims were not clearly discharged by the Plan and Confirmation Order. Imposing sanctions on Nazir and his counsel now -- assuming they have acted in violation of a Court order -- would only serve to compensate United for its own failure to push its position earlier. Indeed, an argument could be made that, if any party should have its fees and expenses reimbursed if the Court ultimately decides that Nazir's claims were discharged, it is Nazir and his counsel, who were allowed and induced to commit time and resources to prosecuting the California Litigation, as well as not being given proper timely notice by United of the Plan or the Confirmation Order or any claims or administrative claims bar dates.

> **2.    United Should Be Deemed to Have Admitted That Employment Claims Arising Post-Petition Are Not Barred by the Plan and Confirmation Order by Its  Failure to Take Any Action to Halt the California Litigation as Well as Scores of Lawsuits for Such Claims and is Estopped From Now Claiming Otherwise.**

As one might expect with respect to any large corporation, United is the subject of a number of lawsuits, including lawsuits, like Nazir's, alleging employment discrimination. Exhibit D is a chart

SA0010

summarizing 17 employment discrimination lawsuits filed against United between January 1, 2003 and

December 31, 2006 and the ultimate resolution or current status of those lawsuits.[4]  Most or all of

these lawsuits appear to allege that, postpetition, United discriminated against its employee. Yet, to

Nazir's and Horowitz's knowledge, United has not sought to have those proceedings dismissed on

the theory that the Plan and Confirmation Order preclude the continuance of these lawsuits.  Indeed,

to Nazir's and Horowitz's knowledge, the only other instance in which United has sought to hold a

party like Nazir in contempt was when United filed a contempt motion against Cynthia Hou, who, like

Nazir, is of Pakistani descent.

Given that United appears to have actively litigated (or is continuing to actively litigate)

scores of cases similar to Nazir's across the country, United should not be heard to complain about

Nazir's commencement or continuation of the California Litigation.  Indeed, this fact would seem to

support the conclusion that United is only using the Motion as a leverage point, shortly before the

commencement of trial, against Nazir and Horowitz to increase the pain or cost to Nazir or to extract

an unreasonable settlement or dismissal of the California Litigation altogether.

**D.      Nazir and His Counsel Did Not Violate, Intentionally or Otherwise, a Clear and Unambiguous Order of this Court and, Therefore, Sanctions Are Not Appropriate.**

       **1.      Nazir's Claims Were Not Discharged by the Plan and Confirmation Order Because (i) United Did Not Give Notice to Nazir of the Confirmation Hearing or of the Bar Date for Filing Administrative Claims and (ii) Even if Notice Had Been Received, it Would Not Have Been Clear that Nazir's Claims Required an Administrative Claim Filing.**

Far from violating a clear order of the Court, as is necessary to impose sanctions, Nazir's

claims were not discharged by the Plan and the Confirmation Order, as United contends, for several

---

[4]      To the extent necessary, Nazir and Horowitz request that the Court take judicial notice of the docket and pleadings, which can be provided if necessary, in the cases referenced in Exhibit D.

- 8 -

reasons. First, Nazir's claims were not discharged by the Plan and Confirmation Order because United did not give notice to Nazir of the confirmation hearing or of any bar date for filing administrative claims.[5]

### (i)    Failure of Notice

It is black letter law that claims may not be extinguished in bankruptcy unless the holder of the claim is given proper notice of the confirmation hearing:

> We hold that notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is violative of the Fifth Amendment to the United States Constitution.

Reliable Electric Co., Inc. v. Olson Construction Co., 726 F.2d 620, 623 (10th Cir. 1984); See also In re Mortgage & Realty Trust, 125 B.R. 575, 581 (Bankr. C.D. Cal. 1991); In re Pettibone Corp., 162 B.R. 791, 807-808 (Bankr. N.D. Ill. 1994) ("a confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and of any claims bar dates fixed therein"); Fed. R. Bankr. P. 2002(b)(2) (requiring not less than 25 days notice to "all creditors" of "the time fixed for filing objections and the hearing to consider confirmation of a . . . chapter 11 . . plan."). Here, no notice was ever given to Nazir of the confirmation hearing and, thus, his claims cannot be extinguished by the Plan and Confirmation Order. United does not appear to dispute the lack of notice to Nazir. Indeed, the affidavit of service for the notice of the confirmation hearing and the deadline to object to confirmation filed by United's noticing agent does not list Nazir as a person who received such notice. That affidavit is more than 6,000 pages long, but

---

[5]    The only bar date notice Nazir received was as to prepetition claims. The deadline to file such claims was in 2003, well before the bulk of Nazir's claims arose and two years before United fired Nazir.

SA0012

relevant portions are attached hereto as <u>Exhibit E</u>.[6]

Nazir's claims relating to postpetition conduct by United (including Nazir's firing) also were not discharged because United was on notice of Nazir's postpetition claims but did not give notice to Nazir of any bar date for filing administrative claims, even assuming they were administrative claims that should have been filed in a proof of claim or request for payment of an administrative claim. United does not appear to dispute that Nazir did not receive such notice. Like the affidavit of service for notice of confirmation and the deadline to object to confirmation, the affidavit of service for the notice of confirmation of United's plan (which also included notice of the administrative claims bar date) filed by United's noticing agent does not list Nazir as a person who received such notice. That affidavit is more than 5,700 pages long, but relevant portions are attached hereto as <u>Exhibit F</u>.[7]

Nazir gave United notice of his claims in October 2005, when he filed an administrative complaint of employment discrimination with the California Department of Fair Employment and Housing, which in turn served the complaint on United. Because United had actual notice of Nazir's claims, it was required to give Nazir actual notice of any relevant claim bar dates. As Judge Katz's decision in the <u>S.N.A. Nut Co.</u> case explains:

> [I]n cases under Chapter 11 of the Code involving corporate debtors, creditors which are known to the debtor must be provided with actual notice of the relevant bar dates. Actual knowledge of the pendency of the bankruptcy by such a creditor is insufficient to satisfy due process.

<u>In re S.N.A. Nut Co.</u>, 198 B.R. 541, 544 (Bankr. N.D. Ill. 1996) (citations omitted). <u>See also</u> <u>In re</u>

---

[6]        In addition, a word search of Nazir's name in the PDF version of the affidavit, which is available on the www.pd-ual.com website, confirms that Nazir was not served with the affidavit.

[7]        In addition, a word search of Nazir's name in the PDF version of the affidavit, which is available on the www.pd-ual.com website, confirms that Nazir was not served with the affidavit.

SA0013

Pettibone Corp., 162 B.R. 791, 808 (Bankr. N.D. Ill. 1994) ("Reasonable notice must be provided to known party litigants in order to ensure that they are provided with the ability and opportunity to properly prosecute or defend a claim. Publication notice cannot replace actual notice due a known creditor").

Nazir's knowledge that United was in bankruptcy is not a substitute for the required mailing of a notice of a bar date to which he is to be bound:

> As specifically applied to bankruptcy reorganization proceedings, the (U.S. Supreme) Court has held that a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has a 'right to assume' that he will receive all of the notices required by statute before his claim is forever barred.

Reliable Electric Co., Inc. v. Olson Construction Co., 726 F.2d 620, 622 (10th Cir. 1984) (citing New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297 (1953); cf. In re Maya Construction Co., 78 F.3d 1395, 1399 (9th Cir. 1996); Spring Valley Farms, Inc. v. Crow, 863 F.2d 832 (11th Cir. 1989).[8]

Courts seem to agree on the consequences of a debtor's failure to give a creditor notice of a relevant bar date. Numerous published cases hold that pre-confirmation claims are not barred by discharge in bankruptcy if the party did not receive sufficient notice of a claim bar date and an opportunity to present the claim in the bankruptcy case. Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.) 96 F.3d 687, 689-90 (3rd Cir. 1996); In re Maya Construction Co., 78 F.3d 1395, 1399 (9th Cir. 1996); Dalton Development Project #1 v. Unsecured Creditors Committee

---

[8]    United contends that Nazir's postpetition claims may qualify as administrative expenses and variously asserts that the bar date for filing administrative expense claims was March 3, 2006 (Motion at p. 8, ¶18) or March 1, 2006 (Motion at p. 3, ¶6). Whatever the bar date may have been for administrative expense claims, United never gave Nazir notice of it. The closest United ever came to that was to apparently send Nazir a one page notice of disclosure statement hearing. That one page did not mention any bar date or that the hearing would affect Nazir's claims.

- 11 -

SA0014

(In re Unioil), 948 F.2d 678, 682-84 (10th Cir. 1991); Spring Valley Farms, Inc. v. Crow, 863 F.2d 832 (11th Cir. 1989); Reliable Electric Co., Inc. v. Olson Construction Co., 726 F.2d 620, 623 (10th Cir. 1984).

Particularly on point in this regard is Judge Schmetterer's decision in In re Big O Movers and Storage, 326 B.R. 434 (Bankr. N.D. Ill. 2005). In that case, a creditor with a pre-confirmation claim had given the debtor notice of her claim. But the debtor failed to schedule her claim and she had no notice of the claim bar date or of the hearing on plan confirmation. The creditor filed a state court lawsuit against the debtor (and obtained a judgment) after the bankruptcy petition was filed, but prior to confirmation of the plan. The debtor subsequently filed a motion seeking to have the creditor's claim allowed as a prepetition claim so that the creditor could receive a 25% distribution, as provided in the plan. The creditor objected to the motion. The court held that while a confirmation order "discharges the Debtor from any debt that arose before the date of confirmation", as provided in Section 1141(d)(i)(A) of the Bankruptcy Code, a "confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy proceeding and of any claims bar dates fixed therein." Id. at 435 (citing In re Longardner and Associates, Inc., 855 F.2d 455, 465 (7th Cir. 1988)). The court further stated that:

> [The creditor] is now unwilling to accept the 25% of her claim offered in the confirmed Plan, and she is not compelled to do so. ***Rather, she is free to continue her effort to collect her full claim in her non-bankruptcy court state litigation.***

Id. at 436 (emphasis supplied).

### (ii)    Administrative Claim Characterization

United asserts in the Motion that some of Nazir's claims may qualify as Administrative Claims (as defined in the Plan). If they are Administrative Claims, they were not discharged by the Plan and

- 12 -

Confirmation Order because, as discussed above, Nazir had no notice of the confirmation hearing or the Administrative Claims bar date.

Moreover, it is far from clear whether the Nazir's claims even qualify as Administrative Claims under the Plan nor whether the notice of the Administrative Claims bar date, if received, would have informed him of a clear obligation to file such a claim. If they are not Administrative Claims, then Nazir was not required to file a claim and Nazir ought to be allowed to pursue the California Litigation unfettered by United's bankruptcy.

The Plan defines an Administrative Claim as:

> A claim for costs and expenses of administration pursuant to Sections 503(b), 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code which may include, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) that (i) arise from a transaction with the Debtors, and (ii) benefit the Debtors in the operation of their business; (b) for compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed pursuant to Sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Confirmation Date; (c) all fees and charges assessed against the Estate pursuant to Chapter 123 of Title 28 United States Code, 28 U.S.C. §§ 1911 through 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

See Plan, p. 4. While this Plan provision goes into some detail as to what may constitute an Administrative Claim, it essentially relies on a reference to Bankruptcy Code sections to define the contours of administrative claims under the Plan and then to several examples, none of which clearly cover postpetition tort or wrongful conduct claims. Of the four Bankruptcy Code sections cited in the Plan's definition of Administrative Claim, the only one arguably applicable to Nazir's claim is

- 13 -

SA0016

section 503(b), which gives administrative claim status to "the actual and necessary costs and expenses of preserving the estate. . ." 11 U.S.C. § 503(b)(1)(A). While there is a line of cases, starting with the Supreme Court's decision in <u>Reading Co. v. Brown</u>, 391 U.S. 471(1968), granting administrative priority to postpetition tort claims, it is not clear that the Plan intended to or effectively did cover those in the definition of Administrative Claim and would certainly be less than clear to a non-bankruptcy lawyer (let alone a lawyer) like Nazir. Certainly, if intended, United could easily and more concisely have clearly said in the Plan and notice of the administrative claims bar date that all claims incurred postpetition required the filing of an administrative claim. It did not do so.

In the present case, United knew of Nazir's postpetition discrimination claims, but did not give Nazir notice of the confirmation hearing or of any bar date for filing his claims as administrative claims or otherwise. Like his prepetition claims, Nazir's postpetition claims were, therefore, not discharged in bankruptcy. Thus, Nazir and his counsel have not intentionally or otherwise violated the Plan or Confirmation Order by commencing or continuing the California Litigation.

> **2.    Nazir's Claims Were Not Discharged By the Plan and Confirmation Order Because They Are for Intentional Misconduct or Gross Negligence, Which Are Specifically Excluded from Discharge by the Terms of the Plan and Confirmation Order.**

Another reason that Nazir has not violated an order of this Court is that his claims in the California Litigation are for intentional misconduct or gross negligence, which are specifically excluded from discharge by the terms of the Plan. Paragraph 4(c) Confirmation Order explicitly excludes from discharge:

> Claims or liability arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Released Party reasonably believes to be in the best interest of the corporation (to the extent such duty is imposed by

SA0017

applicable non-bankruptcy law) *where such failure to perform constitutes willful misconduct or gross negligence*.

Confirmation Order, ¶4(c) (emphasis supplied).

Despite this clear language in the Confirmation Order, United inaccurately claims that "the Plan discharged all claims against United that arose before the entry of the Confirmation Order." Motion at p. 3, ¶7. United cites four provisions of the Plan in support of this inaccurate claim. Examination of each of those four provisions demonstrates that every single one excluded from being extinguished claims whose survival is provided for elsewhere in the Plan or in the Confirmation Order.

The first of these four Plan excerpts quoted by United is from Article X.B of the Plan. Motion at p. 3 ¶7. United's quote, however, omitted the express limiting language that claims are not extinguished if their survival is provided for elsewhere in the Plan or in the Confirmation Order. Here, side by side, is the beginning of the quote by United from Article X.B. and the corresponding complete unexpurgated language (with the expurgated language in bold):

| Quote by United (United's Motion at page 3, ¶7.) | Corresponding Complete Unexpurgated Language |
| --- | --- |
| "Pursuant to Section 1141(d) of the Bankruptcy Code ... the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release ... of Claims and Causes of Action of any nature whatsoever..." | "Pursuant to Section 1141(d) of the Bankruptcy Code, *and except as otherwise specifically provided in the Plan or in the Confirmation Order,* the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release ... of Claims and Causes of Action of any nature whatsoever..." |

The second of the four Plan provisions quoted by United in support of its inaccurate claim is Article X.G. Motion at pp. 3-4, ¶8. Even as quoted by United, that provision expressly excludes

- 15 -

from being extinguished claims for gross negligence or willful misconduct:

> *Except as otherwise specifically provided in the Plan*, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, *except for gross negligence or willful misconduct*...

Plan, §X.G (emphasis supplied).

The third and fourth of the four Plan provisions quoted by United in support of its inaccurate claim are excerpts from Article X.J. The preface of Article X.J., however, excludes from being enjoined the prosecution of claims whose survival is provided for elsewhere in the Plan:

> *Except as otherwise expressly provided in the Plan*...

Plan, §X.J (emphasis supplied). In the Confirmation Order, of course, the Court expressly and properly excluded from discharge claims arising from willful misconduct or gross negligence. Confirmation Order, ¶4(c). This is a common practice. The Plan only enjoins the prosecution of claims that were discharged in bankruptcy.

The claims in Nazir's employment discrimination lawsuit are all for willful misconduct or, at the least, gross negligence. The causes of action pending in Nazir's lawsuit[9] are as follows:

(1)    Harassment Because of Muslim Religion, Color, Ancestry and National Origin;
(2)    Discharge Because of Muslim Religion, Color, Ancestry and National Origin;
(3)    Retaliation for Opposing Unlawful Harassment and Discrimination;
(4)    Failure to Take All Reasonable Steps to Prevent Discrimination and Harassment;
(5)    Discharge Because of History of Disability or Perceived Disability;
(6)    Discharge in Retaliation for Taking CFRA Leave (CFRA is the California counterpart to the federal Family Medical Leave Act);
(7)    Fraud;
(8)    Battery; and
(9)    Intentional Infliction of Emotional Distress.

---

[9]    Nazir's lawsuit originally also included causes of action for breach of contract and breach of the covenant of good faith and fair dealing. Those causes of action have been dismissed. As noted above, although it sought dismissal of those particular causes of action, United never sought to dismiss the entire complaint based on the Plan and Confirmation Order.

- 16 -

Such claims are well within the scope of the claims the Court expressly excluded from being extinguished in bankruptcy.

>    **3.    Even if, Despite the Lack of Notice, Nazir Was Required to Submit a Proof of Claim or an Administrative Claim, Nazir Should Be Deemed to Have Timely Satisfied Any Such Requirement by Making an Informal Claim, Consisting of Service on United of a State Administrative Complaint for Employment Discrimination.**

Nazir's administrative complaint for employment discrimination was served on United in October 2005, three months prior to Plan confirmation. That administrative complaint was an informal claim that satisfied any bankruptcy claim filing requirement. Through the California Litigation, all that Nazir has done (with United's continued active participation and, until recently, United's tacit consent) is to liquidate the amount of that claim. Thus, Nazir's pursuit of the California Litigation does not violate the Plan or Confirmation Order and he and his counsel should not be held in contempt. To hold that Nazir's informal claim was discharged by the Plan and Confirmation Order would be to read the release and injunction provisions of the Plan so broadly as to completely extinguish any claim that was unpaid on the effective date of the Plan. Certainly United cannot take the position that a claim -- prepetition, administrative or otherwise -- is discharged by the Plan and Confirmation Order if the claimant had filed a proof of claim or a request for payment of an administrative expense in advance of any bar date for such claims but that claim remained unpaid on the effective date.

In re Sambo's Restaurants, Inc., 754 F.2d 811, 817 (9th Cir. 1985) in instructive. There, the court held that a complaint filed in state court postpetition, followed by attorney correspondence, constituted an informal proof of claim, even though not filed with the bankruptcy court. The court

- 17 -

also held that as courts of equity, the bankruptcy courts should allow such informal proofs of claim to be freely amended, relating back to the date of the informal claim. See, e.g., Waits v. Weller, 653 F.2d 1288, 1290 (9th Cir. 1981). In Re Franciscan Vineyards, Inc., 597 F.2d 181, 183 (9th Cir. 1979) (per curiam), cert. denied, 445 U.S. 915(1980) also held there is no requirement that the document purporting to be an informal proof of claim be filed with the bankruptcy court. Informal proofs of claim need only claim damages that are reasonably quantifiable. Where damages are ongoing and proof of injury would require extensive evidentiary presentation, quantification of damages is not required. Pizza Hut of Hawaii, Inc. v. Shakey's, Inc., 761 F.2d 1374, 1381 (9th Cir. 1985).[10]

While the Court need not find that it was necessary for Nazir to have filed a more formal claim against United in order to deny the Motion and permit the California Litigation to proceed, if the Court determines that such a filing is appropriate, Nazir's administrative complaint for employment discrimination should, in any event, satisfy any such requirement. It put United on notice, well in advance of confirmation, that Nazir was asserting a claim against United and thus did not result in any prejudice to United.

**E.    In the Alternative, Nazir Should Be Granted Leave to File a Late Claim and Allowed to Continue to Litigate in State Court.**

At the very least, if it is determined that a formal administrative claim should have been filed, Nazir should be granted leave to now file such a claim for an administrative expense treatment and allowed to liquidate that claim by completing the litigation in the California state court, which has administered Nazir's case for more than a year and is nearly ready for trial. The Supreme Court in

---

[10]    The Seventh Circuit apparently has not established any set of requirements for a document to qualify as an informal proof of claim. See In re Boone County Utilities, LLC, ___ F.3d ___, 2007 WL 3054255 (7th Cir. 2007) ("we see no

- 18 -

SA0021

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993) considered whether the bankruptcy court abused its discretion in declining to excuse plaintiffs' failure to file timely proofs of claim regarding their retention bonuses. Applying the "excusable neglect" standard, the Court indicated that the determination of whether neglect is "excusable" is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 395. See also Fed. R. Bankr. P. 9006(b). Such circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay ... and whether the movant acted in good faith." Id. at 395. This list is not exhaustive. Id. While not technically before the Court or raised directly by the Motion, if the Court were to determine that Nazir should file a proof of claim or an administrative claim as a prerequisite to continuing the California Litigation, the excusable neglect standard would easily be met here, particularly given that Nazir never received notice of the confirmation hearing or the bar date for filing administrative claims. See, e.g., In re S.N.A. Nut Co., 198 B.R. 541, 544 n.2 (Bankr. N.D. Ill. 1996) (holding that equitable considerations warranted a finding of excusable neglect where known creditor was not given notice of bar date).

---

need to set out requirements for informal proofs of claim in this case").

SA0022

## IV.    CONCLUSION

For the foregoing reasons, Nazir and Horowitz request that the Court deny the Motion and grant them such other and further relief as may be just and proper.

IFTIKHAR NAZIR and PHIL HOROWITZ

By:   /s/ Mark F. Hebbeln
Harold L. Kaplan (ARDC No. 312529)
Mark F. Hebbeln (ARDC No. 6272385)
DRINKERBIDDLEGARDNERCARTON
(Drinker Biddle & Reath LLP)
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 569-1000

- 20 -

SA0023

# EXHIBIT A

SA0024

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| *In re* | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION,** *et al.,* | ) | **Case No. 02 B 48191** |
| | ) | **(Jointly Administered)** |
| *Reorganized Debtors.* | ) | |
| | ) | **Honorable Eugene R. Wedoff** |
| | ) | |
| | ) | |
| | ) | |

## Affidavit of Phil Horowitz

I, Phil Horowitz, depose and state as follows:

1. I am an attorney licensed to practice law in the State of California. I am counsel for plaintiff Iftikhar Nazir in the lawsuit he filed against United Air Lines, Inc. and Bernard Petersen. I submit this affidavit in support of the Objection to Motion for Order Holding Iftikhar Nazir and His Counsel in Contempt of Court.

2. I have represented employees for over 23 years. I am Chair of the Labor and Employment Law Section of the State Bar of California. I am past Chair of the California Employment Lawyers Association. I Chaired the Advisory Committee to the California Judicial Council that drafted the Form Employment Interrogatories adopted by the California Judicial Council. I volunteer teach trial advocacy at Stanford Law School and University of San Francisco Law School.

3. Defendant United Air Lines, Inc. has vigorously litigated Mr. Nazir's lawsuit on the merits in California Superior Court for almost a year and a half.

4. Early on in the lawsuit, counsel for United Air Lines, Inc. requested that plaintiff agree to move the venue of the lawsuit from the California Superior Court for the City and County of San Francisco to the California Superior Court for San Mateo County. Plaintiff's counsel agreed. Defendant United Air Lines, Inc. then filed an answer in the California Superior Court for San Mateo County.

5. United Air Lines, Inc. has engaged in extensive discovery in Mr. Nazir's California lawsuit, including taking Mr. Nazir's deposition for four days, defending over 25 days of videotaped depositions, sending numerous interrogatories and requests for production of documents, and responding to many interrogatories and requests for production. Defendant United Air Lines, Inc. produced over 25,000 pages of documents in response to plaintiff's requests for production of documents.

6.   United Air Lines, Inc. filed four mainly unsuccessful discovery motions in Mr. Nazir's California lawsuit and unsuccessfully opposed about a dozen discovery motions in Mr. Nazir's California lawsuit.

7.   The pleadings files alone in Mr. Nazir's California lawsuit are more than three feet thick.

8.   I estimate that United Air Lines, Inc. has spent at least several hundred thousand dollars in attorneys fees to date defending Mr. Nazir's California lawsuit on its merits.

9.   At no time before United Air Lines, Inc. filed its motion for contempt did counsel for United Air Lines, Inc. ever write me a letter, e-mail me, call me, or talk with me in person about the possibility that it would file a motion for contempt against Mr. Nazir or me or seek any other relief in any bankruptcy court.

10.   United Air Lines, Inc.'s counsel served United's motion for contempt on me so that I first received it two days before the original hearing date in Chicago.  I received the motion by overnight delivery on Monday, November 12, 2007 at my San Francisco office for a hearing set in Chicago for Wednesday, November 14, 2007.

11.   I filed and have prosecuted Mr. Nazir's California lawsuit in good faith, honestly believing to this day that Mr. Nazir's claims are not barred by bankruptcy.  I have the highest respect for court orders.  I would not have filed or prosecuted Mr. Nazir's California lawsuit if I had believed that doing so would violate an order of this or any other court.

I declare under penalty of perjury under the laws of the United States that the facts set forth in this declaration are true and correct.

Dated: December 7, 2007                                    Phil Horowitz

CH01/ 12525641.1

# EXHIBIT B

SA0027

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                  ARNOLD SCHWARZ



**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2552
www.dfeh.ca.gov

October 5, 2005

GREGORY F. HALL

OCT 1 0 2005

SFOVO

Greg Hall
Sr VP (SFOVO)
UNITED AIRLINES
Bldg15-2, Mohagany Row, SFIA
San Francisco, CA  94128-3800

RE:   E200506A0354-00-e/37AA604002
      NAZIR/UNITED AIRLINES

Dear Greg Hall:

## NOTICE OF FILING OF DISCRIMINATION COMPLAINT

Enclosed is a copy of a complaint filed with the Department of Fair Employment
and Housing (DFEH) pursuant to Government Code section 12960.  This shall
constitute service in accordance with Government Code section 12962.

DFEH serves as a neutral fact-finder and represents the State of California rather
than the complaining party.  The merits of this complaint have not been
determined.  It was, however, subjected to a screening process, and the
allegations, if proven, could support a finding of discrimination.

If this complaint has also been filed with the U.S. Equal Employment Opportunity
Commission (EEOC), a notice is enclosed.  You need not reply to EEOC unless that
agency specifically requests a response.

Follow the instructions on the attached form ''Response to a Complaint of
Discrimination'' to compose your reply.

An on-site review for purposes of an investigation may be necessary.  If such a
need should arise, you will be contacted.

California Government Code section 12946 requires that all employment records
(or union membership and referral records) be retained for a minimum of two (2)
years.  When a discrimination complaint has been served, the records must be kept
until DFEH closes its inquiry and until any resulting law suit or appeal has been
terminated.

D02275

**SA0028**

Notice of Filing of Discrimination Complaint
Page Two

Further, Government Code section 12940, subdivision (f), prohibits any retaliatory action against a person because he or she has filed a complaint, has opposed any practices forbidden under the Fair Employment and Housing Act, or has assisted in any proceeding before the DFEH or the Fair Employment and Housing Commission.

**California Code of Regulations, title 2, section 7411, requires respondents to file their addresses within ten (10) days of being notified by DFEH that a complaint has been filed against them, provided DFEH notifies them of this requirement. You are hereby notified that, as a respondent, you are required to file your address with DFEH within ten (10) days of this notice. You are also required to notify DFEH in writing of any pending change of address and the effective date of such change, while the complaint is under investigation and throughout any administrative adjudication. Forms have been included for your convenience.**

If you are interested in discussing a possible settlement of this complaint, we encourage you to contact the assigned consultant (listed below) immediately. This will avoid unnecessary delay and limit the accrual of back pay or other liability. All settlement discussions are confidential, and not subject to disclosure. All discussions referring to evidence or information which has a bearing on determining the merits of this complaint will not be considered part of a settlement discussion unless confidentiality is acknowledged by DFEH. If a settlement is reached which is mutually acceptable to the parties, submission of the requested information may not be necessary.

If you have any questions, please contact the consultant named below.

Sincerely,

RICHARD M. SWIDERSKI
Consultant
Telephone Number: 510-622-2954

Enclosures
CERTIFIED MAIL:  RETURN RECEIPT REQUESTED

DFEH-200-04 (06/98)

D02276

**SA0029**

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2552
www.dfeh.ca.gov



RE:  E200506A0354-00-e/37AA604002
<u>NAZIR/UNITED AIRLINES</u>

### RESPONSE TO A COMPLAINT OF DISCRIMINATION - B

You are requested, within thirty (30) calendar days of receipt of this letter, to respond in detail to each of the allegations contained in the complaint and to provide any documentary evidence supporting your position.

1.  COMPLETE THE FOLLOWING INFORMATION:

    A. Legal name of business:

        _____

        _____

    B. Any other name(s) which business has operated under in California: (Attach additional sheets, if necessary.)

        _____

        _____

    C. Total number of persons employed in California:

        _____

    D. Does your company have a current contract(s) for the provisions of goods, services or public works with the State of California?  If so, name the awarding agency(ies):

        _____

        _____

        _____

D02277

SA0030

Response To A Complaint of Discrimination
Page Two

2. ATTACH SHEETS RESPONDING TO EACH ALLEGATION LISTED IN THE
   COMPLAINT.  THE RESPONSE SHOULD INCLUDE AN ANSWER TO THE
   SPECIFIC ALLEGATIONS STATED ON THE COMPLAINT FORM AND EVIDENCE,
   SUCH AS, RECORDS, DOCUMENTS, AND STATISTICS, WHICH SUPPORT
   THAT ANSWER.

   A. Answering the complaint:

      Each issue raised in the complaint should be addressed.  Factual
      statements made in the complaint should be either verified as accurate or
      refuted.  For example, if an employee claims he or she was the only person
      punished for tardiness, a list of others who were tardy should be
      submitted.  The list should show, for each individual, the number of tardies
      and the punishment, if any.

   B. Where written evidence exists, it should be provided to support each
      answer given to the complaint.  Personnel records of the complainant
      which verify the employer's position should be submitted.  Witness
      statements should be in the form of affidavits or signed statements.
      Reference to other employees should include a notation identifying them by
      race, sex, age, etc., depending upon the type of discrimination alleged in
      the complaint.

3. IN ADDITION TO RESPONDING TO THE ALLEGATIONS CONTAINED IN THE
   COMPLAINT, PLEASE FURNISH INFORMATION REQUESTED ON THE
   ATTACHED SUPPLEMENTAL SHEET.

4. PERSON PREPARING RESPONSE: (Please type or print the following.)

   NAME: _____

   TITLE: _____

   SIGNATURE: _____ DATE:_____

DFEH-200-28 (06/98)

ASWIDERRM

D02278

**SA0031**

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                                ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973  TTY (800) 700-2320  Fax (510) 622-2552
www.dfeh.ca.gov



RE:    E200506A0354-00-e/37AA604002
       <u>NAZIR/UNITED AIRLINES</u>

## NOTIFICATION OF RESPONDENT'S ADDRESS

Pursuant to California Code of Regulations, title 2, section 7411, I hereby file my address with the Department of Fair Employment and Housing (DFEH):

_____

Respondent's Legal Name

_____

Address

_____
City                                          State            Zip Code

_____

Telephone Number

I understand that I am required to notify DFEH of any change in address throughout the investigation and administrative adjudication.

_____        _____
Signature: Respondent's Representative                Date

_____        _____
          Print Name                                  Title

DFEH-100-22 (06/98)

ASWIDERRM

D02279

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                           ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2552
www.dfeh.ca.gov



RE:    E200506A0354-00-e/37AA604002
       NAZIR/UNITED AIRLINES

### NOTIFICATION OF RESPONDENT'S CHANGE OF ADDRESS

Pursuant to California Code of Regulations, title 2, section 7411, I hereby notify
the Department of Fair Employment and Housing (DFEH) of a change in my address
as follows:

CHANGE FROM                                          CHANGE TO

_____          _____
Respondent's Legal Name                              Respondent's Legal Name

_____          _____
Address                                              Address

_____          _____
City             State   Zip Code                    City             State   Zip Code

_____          _____
Telephone Number                                     Telephone Number

Effective date of change of address:     _____


_____          _____
Signature: Respondent's Representative               Date


_____          _____
       Print Name                                         Title

DFEH-100-23 (06/98)

ASWIDERRM

D02280

**SA0033**

STATE OF CALIFORNIA - State and Consumer Services Agency                                    ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973  TTY (800) 700-2320  Fax (510) 622-2952
www.dfeh.ca.gov



# PRIVACY NOTIFICATION

The Information Practices Act of 1977 requires this Department to provide the following information to persons who are asked by the Department of Fair Employment and Housing (DFEH) to supply information:

- The principal purpose for requesting information is to receive, investigate, and resolve complaints of discrimination.

- California Government Code section 12900, ex seq. and California Civil Code section 51 et seq. require persons seeking to file complaints with DFEH to provide sufficient information for the Department to establish jurisdiction and conduct an investigation of the allegations.

- The submission of requested information by those against whom a complaint is filed (respondent) is voluntary. However, all respondents should be aware that DFEH has the authority to subpoena those records and witnesses it deems necessary to complete the investigation.

- As authorized by law, information furnished may be transferred to the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the U.S. Department of Housing and Urban Development, the U.S. Department of Health and Human Services, the U.S. Department of Education, the U.S. Department of Justice, or any branch of the California State Government, or any other local or Federal agency with similar jurisdiction.

- Information furnished would also be released pursuant to a valid subpoena.

- For the purpose of seeking a determination on a complaint, the information provided may be disclosed to members of the California Fair Employment and Housing Commission and an Administrative Law Judge at a public hearing.

- As permitted by the Information Practices Act, unless compelled by a subpoena, we do not release information in complaint files relating to open cases other than non-personal information on the complaint form itself. Once a complaint is closed, individuals have the right of access to records containing personal information about them which are maintained by the Department of Fair Employment and Housing. Non-personal information, including the allegations in the complaint document itself, are disclosable to the public when a case has been closed. The official responsible for maintaining the information is the District Administrator of the office where the complaint was filed.

DFEH-100-02 (04/97)                                                    D02281

SA0034

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200506 A-0354-00-e |
|---|---|---|
| | EEOC # | 37AA604002 |

dual-filed with EEOC, this form may be affected by the Privacy Act of 1974.

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC

COMPLAINANT'S NAME (Indicate Mr. or Ms.)

NAZIR, Iftikhar A. (Mr.)

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| P.O. Box 2242 | (650) 225-9591 |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| South San Francisco, CA 94083 | | | San Mateo | 083 |

## NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME

United Airlines

| ADDRESS | TELEPHONE NUMBER (INCLUDE AREA CODE) |
|---|---|
| Building 49, SFIA | (650) 634-4545 |

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| San Francisco, CA 94128 | | | San Francisco | 075 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOX[ES])

☐ RACE   ☐ SEX   ☐ DISABILITY   ☑ RELIGION   ☑ NATIONAL ORIGIN/ANCESTRY   ☐ DENIAL OF FAMILY/MEDICAL LEAVE   ☐ SEXUAL ORIENTATION
☑ COLOR   ☐ AGE   ☐ MARITAL STATUS   ☐ MEDICAL CONDITION (cancer or genetic characteristics)   ☐ OTHER (SPECIFY)

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|
| 10,000 | May 9, 2005 | 45 |

THE PARTICULARS ARE:

On 5/9/05 I was treated differently and terminated in my position of Supervisor. I was hired on 4/10/89 and earned $70,000 a year.

I.   Bernie Petersen, Manager, told me I was terminated for violating the employer's code of conduct.

II.   I believe that I was treated differently and terminated because of an inadequately investigated charge of sexual harassment, and because of my color (dark), religion (Islam) and national origin (Pakistan). The particulars of my belief are as follows:

A.   On 4/13/05 I complained to Petersen about the services provided by a contractor. On 4/20/05 Petersen and Ron Rich, Labor Relations, informed me that my conduct was the subject of a complaint of sexual harassment under investigation, and I was not allowed to give evidence defending myself prior to my termination.

B.   I was the only supervisor of my religion and national origin, which clearly were offensive to the contractor's onsite manager, who always displayed a negative attitude toward me.

D02282

SA0035

## * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200506 A-0354-00-e |
| | EEOC # | 37AA604002 |

COMPLAINANT'S NAME(S) (Indicate Mr. or Ms.)
NAZIR, Iftikhar A. (Mr.)

RESPONDENT'S NAME
United Airlines

THE PARTICULARS ARE:

C.  On 5/19/05 I sent a letter to Greg Hall, Senior Vice President, denying the harassment charges and complaining of different treatment based on my religion and national origin. I did not receive a reply to my letter.

Typed and mailed for signature on 08/15/05.

☒ I also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 9/29/05

At SOUTH SAN FRANCISCO
City

COMPLAINANT'S SIGNATURE

DFEH-300-01 (06/97)    SF:RS:ct
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED: 10/03/05    OCT - 3 2005
STATE OF CALIFORNIA

D02283

SA0036

# SUPPLEMENT TO NOTICE OF FILING OF EMPLOYMENT DISCRIMINATION COMPLAINT

## Case No.  E200506 A-0354-00-e

In addition to the following specific information, please remember to complete the "Response to a Complaint of Discrimination - B" and respond, in detail, to each allegation in the complaint.  Please supply all statements or documents, which in your opinion, will assist us in determining the merits of this complaint.

1.     State the reason(s) complainant was terminated.

2.     Provide a list naming all persons under the supervision of Bernie Petersen for the past two years.  For each person, identify date hired, position, date and reason if terminated, race/color, national origin, and religion. Submit the employment application for each person listed.

3.     List the names of all persons involved in making the specific decisions to which the complainant objects.  State each person's job title and responsibility as it relates to the issues raised by the complaint.

D02284

SA0037

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | PERSON FILING CHARGE |
|---|---|
| | THIS PERSON (CHECK ONE) |
| | ___ Claims to be aggrieved |
| IFTIKHAR A. NAZIR | ___ Is filing on behalf of other person(s |
| vs. | DATE OF ALLEGED VIOLATION |
| UNITED AIRLINES | Earliest          Most Recent |
| | PLACE OF ALLEGED VIOLATION |
| | EEOC CHARGE NUMBER |
| | 37AA604002 |
| | FEPA CHARGE NUMBER (if known) |
| | E200506A0354-00-e |

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTIONS WHERE AN FEP AGENCY WILL INITIALLY PROCESS
*(See EEOC "Rules and Regulations" for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[✓] Title VII of the Civil Rights Act of 1964

[ ] The Age Discrimination in Employment Act of 1967 (ADEA)

[ ] The Americans with Disabilities Act of 1990 (ADA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to._____

[X] The _CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING_ and sent to the EEOC for dual filing purposes.
                                            (FEP Agency)

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

[X]   As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you
[ ]   must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings
      without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes
      the charge, the Recordkeeping and Non-Retaliation provision of Title VII and the ADEA as explained on the reverse side of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ]   An Equal Pay Act investigation (29 U.S.C. 209(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X]   Enclosure: Copy of the Charge

## BASIS OF DISCRIMINATION

[ ] RACE   [✓] COLOR   [ ] SEX   [✓] RELIGION   [✓] NATIONAL ORIGIN   [ ] AGE   [ ] OTHER

[ ] DISABILITY   [ ] RETALIATION

CIRCUMSTANCES OF ALLEGED VIOLATION:

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| October 5, 2005 | JOAN EHRLICH, DISTRICT DIRECTOR, SAN FRANCISCO D.O. | |

EEOC FORM 131-A

D02285

SA0038

**EXHIBIT C**

SA0039

# ✈ **U N I T E D**

A STAR ALLIANCE MEMBER ✨ ™

VIA FACSIMILE

October 28, 2005

Department of Fair Employment & Housing
C/O Mr. Richard Swiderski
1515 Clay Street – Suite 701
Oakland, CA 94612

Re: Mr. Iftikhar Nazir v. United Airlines
Charge Number E200506A-0345-00E

Dear Ms. Swiderski,

This letter is to advise you that United Airlines is in receipt of the aforementioned charge of discrimination. Please be advised that I will be responding to this matter on behalf of United Airlines. Kindly forward all future communication regarding this matter to me at the address listed below.

Also, I would like to request an extension of time to submit our position statement, until November 28, 2005. This extension is being requested because the charge was originally sent to the incorrect department and our office just received it. This additional time will allow us to complete a thorough investigation in the allegations and prepare our position statement. In the event this extension is problematic, would you contact me to discuss an amenable alternative.

Thank you for your consideration.

Respectfully,

*Megan Detzner*

Megan Detzner - Sr. Staff Representative
United Airlines – EEO Compliance (WHQLD)
1200 E. Algonquin
Elk Grove, IL 60007
Fax 847-364-0103
Email: megan.detzner@united.com

D02259

SA0040

**EXHIBIT D**

SA0041

## Non-Comprehensive List of Employment Discrimination Cases Filed Against United from January 1, 2003 through December 31, 2006

| Name of Case and Jurisdiction. | Date Filed | Date Completed | How Case Was Resolved |
|---|---|---|---|
| EEOC v. United Airlines, Inc., Case No. 1:03-cv-00812 (Northern District of Illinois) | 02/04/2003 | 05/26/2004 | Consent Decree entered on 4/14/2004. |
| Rusin v. United Air Lines, Case No. 1:03-cv-05767 (Northern District of Illinois) | 08/18/2003 | 08/30/2005 | Order granting defendant's Motion for Summary Judgment on 8/30/2005. |
| Huntington v. United Airlines, Inc., Case No. 1:04-cv-00841 (Southern District of Indiana) | 05/13/2004 | 09/23/2005 | Stipulation of Dismissal filed by plaintiff on 9/22/2005. |

1

| Keichinger v. United AL Inc., et. al., Case No. 1:04-cv-03691 (Northern District of Illinois) | 06/21/2004 | 03/31/2005 | Defendant's Motion to Dismiss granted on 03/31/2005. |
| Rivero v. United Airlines, Inc., Case No. 1:04-cv-06514 (Northern District of Illinois) | 10/08/2004 | 11/22/2005 | Defendant's Motion for Summary Judgment granted on 11-22-2005. |
| Carey v. United Airlines, Inc., Case No. 1:05-cv-00185 (District of Colorado) | 02/02/2005 | 10/18/2005 | Stipulation of Dismissal with Prejudice filed by Plaintiff and Defendant, dated 10/14/2005. |
| Cross v. United Airlines et. al., Case No. 2:05-cv-03398 (Central District of California) | 05/06/2005 | 10/10/2006 | Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Cross Motion for Summary Adjudication, dated 10/10/2006 |

2

SA0043

| | | | |
|---|---|---|---|
| Starghill v. United Airlines, Inc., Case No. 2:05-cv-72936 (Eastern District of Michigan) | 07/27/2005 | 10/11/2006 | Order Granting Defendant's Motion for Summary Judgment, filed on 10/02/2006. |
| Smith v. United Airlines, Case No. 1:05-cv-02237 (Northern District of Georgia) | 08/29/2005 | 03/14/2007 | Order granting Defendant's Motion for Summary Judgment, issued on 3/14/2007. |
| Ogle v. UAL Corporation and United Air Lines, Inc., Case No. 3:05-cv-03874 (Northern District of California) | 09/26/2005 | 08/30/2006 | Order of Dismissal Upon Settlement, filed 8/30/2006 |

3

SA0044

| | | |
|---|---|---|
| Pummell v. UAL Corporation et al, Case No. 1:05-cv-05896 (Northern District of Illinois) | 10/13/2005 | 03/30/2007 | Defendants' Motion for Summary Judgment granted on 3/30/2007. |
| O'Rear v. United Airlines, Case No. 1:06-cv-00616 (Northern District of Illinois) | 02/02/2006 | 07/19/2006 | Case dismissed for want of prosecution by plaintiff, minute entry dated 11/30/2006. |
| Hutto v. United Airlines, Case No. 3:06-cv-00182-RV-MD, (Northern District of Florida) | 04/26/2006 | 05/09/2007 | Joint Stipulation of Dismissal with Prejudice filed by plaintiff on 05/09/2007. |
| Delaplaine v. United Airlines, Inc., Case No. 2:06-cv-00989 (Western District of Washington) | 07/14/2006 | 10/18/2007 | Case went to trial, after court entertained cross motions for summary judgment. Court granted in part plaintiff's motion for partial summary judgment and denied defendant's motion for partial summary judgment on 09/21/2007. |

4

| | | |
|---|---|---|
| Myers v. United Air Lines, Inc., Case No. 2:06-cv-00650 (Southern District of Ohio) | 07/28/2006 | ongoing | Discovery cut off 2/29/2008. Dispositive motions due 3/17/2008. |
| EEOC v. United Air Lines, Inc., Case No. 2:06-cv-01407 (Western District of Washington) | 09/28/2006 | ongoing | Jury Trial date set for 4/14/2008. |
| Palazzo v. United Air Lines, Inc., Case No. 1:06-c-13747 (Southern District of New York) | 12/05/2006 | 10/02/2007 | Stipulation of Dismissal with Prejudice, dated 10/02/2007. |

CH01/ 12525565.1

5

SA0046

# EXHIBIT E

SA0047

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION, et al.,** | ) | **Case No. 02-B-48191** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |
| | ) | **Honorable Eugene R. Wedoff** |

**DECLARATION OF POORMAN-DOUGLAS CORPORATION
REGARDING SERVICE OF SOLICITATION DOCUMENTS**

I, Betina Wheelon, being duly sworn upon oath, state as follows:

1.    I am over eighteen years of age and the statements contained herein are based on my personal knowledge. I am employed in the offices of Poorman-Douglas Corporation ("PDC"). In the above-captioned matter, PDC is the claims and noticing agent of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division and the Debtors' Court appointed Solicitation Agent.

2.    Attached hereto as <u>Exhibit 1</u> are the Debtors' solicitation documents ("Solicitation Documents) that were served upon various parties pursuant to the Court approved Solicitation Procedures, as set forth in more detail below.

3.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to each of the 385 parties listed on <u>Exhibit 2</u>:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-<u>Unsecured Retained Aircraft Claims</u>
- Voting Instructions

K&E 10816587 2

- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

4.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to each of the 153 parties listed on Exhibit 3:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-Unsecured Rejected Aircraft Claims
- Voting Instructions
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

5.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to each of the 33 parties listed on Exhibit 4:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-Unsecured Public Debt Aircraft Claims
- Voting Instructions
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement

2

SA0049

- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

6.      Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused Merrill Corporation to serve by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to each of the 7,434 parties listed on Exhibit 5:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-Unsecured Convenience Class Claims
- Voting Instructions
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

7.      Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused Merrill Corporation to serve by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to the 33,879 parties listed on Exhibit 6:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-Unsecured Retiree Convenience Class Claims
- Voting Instructions
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

3

SA0050

- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

8.      Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused Merrill Corporation to serve by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to the one party listed on <u>Exhibit 7</u>:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-<u>Unsecured PBGC Claims</u>
- Voting Instructions
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

9.      Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused Merrill Corporation to serve by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following Solicitation Documents to each of the 8,743 parties listed on <u>Exhibit 8</u>:

- Ballot for Accepting or Rejecting the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code-<u>Other Unsecured Claims</u>
- Voting Instructions
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

4

K&E 10816587 2

10.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused Financial Balloting Group to serve by hand or overnight courier to the banks, brokerage firms, and agents (the "Nominees") in connection with the relevant public securities included on Exhibit 9 hereto the Solicitation Documents listed in (A) below (which are also attached as Exhibit 1 hereto) pursuant to the process as outlined in (B) below:

(A)    The following documents were served:

- Beneficial Holder Ballot[1] or Letter of Direction, as appropriate
- Voting Instructions for the Ballots
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

---

[1]    The relevant Master Ballots were sent to the Nominees under separate cover, via overnight courier, on the same date.

K&E 10816582.2

SA0052

(B)    The documents were served as follows:

- On October 27, 2005, to the Nominees on Exhibit 10 hereto on account of the relevant corporate bond issuances included on Exhibit 9;

- On October 27, 2005, to the Nominees on Exhibit 11 hereto on account of the relevant non-Chicago municipal bond issuances included on Exhibit 9;

- On October 27, 2005, to the Nominees on Exhibit 12 hereto on account of the relevant Chicago municipal bond issuances included on Exhibit 9; and

- On October 28, 2005 to the Nominees on Exhibit 13 hereto on account of the relevant controlling tranche aircraft issuances included on Exhibit 9.


11.    I also caused Financial Balloting Group to serve by hand or overnight courier to the Nominees in connection with the relevant public securities included on Exhibit 9 the Non-Voting Documents (attached as Exhibit 1 hereto) as follows:

- On October 27 and 28, 2005, to the Nominees on Exhibit 14 hereto on account of the equity and TOPRS issuances included on Exhibit 9, the Notice of Non-Voting Status – Deemed Reject and the Solicitation Notice;

- On October 28, 2005 to the Nominees on Exhibit 15 hereto on account of the relevant debt issuances on Exhibit 9, the Notice of Non-Voting Status – Deemed Accept and the Solicitation Notice;

- On October 28, 2005, to the Nominees on Exhibit 16 hereto on account of the relevant municipal bond issuance on Exhibit 9, the Solicitation Notice; and

- On October 31, 2005 to the Nominees on Exhibit 17 hereto on account of the relevant non-controlling tranche aircraft issuances on Exhibit 9, the Notice of Non-Voting Status with respect to Certificateholders in Non-Controlling Tranches and the Solicitation Notice.

6

SA0053

12.    On October 28, 2005, I also caused Financial Balloting Group to serve by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the registered holders included on Exhibit 18 hereto the following:

- Beneficial Holder Ballot or Letter of Direction, as appropriate
- Voting Instructions for the Ballots
- CD-Rom containing (i) the Debtors' Disclosure Statement with all its exhibits, including the Plan of Reorganization, (ii) the Solicitation Procedures Order, and (iii) certain other documents contained in the Plan Supplement
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization
- Summary of Reorganizing Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code
- Business Reply Envelope

13.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following documents (attached as Exhibit 1 hereto) to each of the 11,400 parties listed on Exhibit 19:

- Notice to Counterparties to Executory Contracts and Unexpired Leases
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

14.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following documents (attached as Exhibit 1 hereto) to each of the 249 parties listed on Exhibit 20:

- Notice of Non-Voting Status with Respect to Unimpaired Classes Deemed to Accept the Plan and Unclassified Classes
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

7

SA0054

15.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following documents (attached as Exhibit 1 hereto) to each of the 66,185 parties listed on Exhibit 21:

- Notice of Non-Voting Status with Respect to Impaired Classes Deemed to Reject the Plan
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

16.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following documents (attached as Exhibit 1 hereto) to each of the 7,042 parties listed on Exhibit 22:

- Notice to Parties to Retained Causes of Action
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

17.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following documents (attached as Exhibit 1 hereto) to each of the 122 parties listed on Exhibit 23:

- Notice of Non-Voting Status with Respect to Disputed Claims
- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

8

SA0055

18.    Commencing on the 27th day of October 2005 and completing on the 28th day of October 2005, I caused to be served by first-class mail, deposited with the United States Postal Service with postage thereon fully prepaid, the following document (attached as Exhibit 1 hereto) to each of the 11 parties listed on Exhibit 24:

- Notice of (A) Objection and Voting Deadlines, (B) Solicitation and Voting Procedures, and (C) Hearing to Confirm the Plan of Reorganization

DATED:    November 14, 2005

Betina Wheelon

STATE OF OREGON
COUNTY OF WASHINGTON

Subscribed and sworn to before me this 14th day of November 2005, by Betina Wheelon who states that the information contained in the foregoing is true and correct to the best of her knowledge, information and belief.

WITNESS my hand and official seal.

Notary Public
In and for the State of Oregon

OFFICIAL SEAL
PATRICIA M. EVANS
NOTARY PUBLIC-OREGON
COMMISSION NO. 382591
MY COMMISSION EXPIRES AUGUST 1, 2008

9

K&E 10816587.2

**SA0056**

# EXHIBIT 8

SA0057

Debtor:          UAL Corporation
Description:     FORM 221 - GENERAL UNSECURED BALLOT
Mailing Number:  0510B
Notices Mailed By:  10/28/2005  and sent to following creditors:

```
0248210 435579  S#0003351
NATIONAL PROCESSING CO LLC
JONES DAY
ATTN: HEATHER LENNOX
901 LAKESIDE AVE
CLEVELAND, OH 44114-1116

0248210 55843  S#0003939
NATIONWIDE HOSPITALITY
DEPT 20-1047
PO BOX 5940
CAROL STREAM, IL 60197-5940

0248191 344235  S#0001158
NATL FINANCIAL SERVICES CORP
FBO MICHAEL A LINDEN IRA
5938 PAGE PL
ROCKFORD, IL 61101-7240


0248210 232456  S#0007583
NAVARRA, JOSEPHINE
3005 W 111TH PL
WESTMINSTER, CO 80031-6834

0248210 416844  S#0004359
NAVIGATO & SALVATO
53 W JACKSON
STE 1750
CHICAGO, IL 60604

0248210 427311  S#0003544
NAVITAIRE INC
ATTN: FRANK KUHAR
901 MARQUETTE AVE STE 1600
MINNEAPOLIS, MN 55402-3210


0248210 434322  S#0004407
NAZE, JAMES P
MECKLER BULGER & TILSON LLP
123 N WACKER DR STE 1800
CHICAGO, IL 60606

0248210 358037  S#0003548
NCS PEARSON
RANDY GIBB
5601 GREEN VALLEY DR
BLOOMINGTON, MN 55437-1099

0248210 432583  S#0004409
NEAL JR, JOHN BEDFORD
MECKLER BULGER & TILSON LLP
123 N WACKER DR STE 1800
CHICAGO, IL 60606


0248210 430852  S#0004400
NEAL JR, WILLIAM C
MECKLER BULGER & TILSON LLP
123 N WACKER DR STE 1800
CHICAGO, IL 60606

0248191 344265  S#0001787
NEAL, BRENDA S
2734 S BEVERLY DR
LOS ANGELES, CA 90034-1818

0248191 232552  S#0000005
NEALE, JOHN H
39 TOPPANS LN
NEWBURYPORT, MA 01950-3842


0248191 232554  S#0000738
NEALE, MARILYN H
9515 GREYSTONE PKWY
BRECKSVILLE, OH 44141-2939

0248210 437591  S#0007460
NEBRASKA STATE TREASURER
UNCLAIMED PROPERTY DIVISION
PO BOX 94788
LINCOLN, NE 68509

0248210 4454  S#0007461
NEBRASKA, STATE OF
DEPT OF REVENUE
ATTN: BANKRUPTCY UNIT
PO BOX 94818
LINCOLN, NE 68509-4818


0248213 4454  S#0008733
NEBRASKA, STATE OF
DEPT OF REVENUE
ATTN: BANKRUPTCY UNIT
PO BOX 94818
LINCOLN, NE 68509-4818

0248210 433043  S#0007975
NECKELMANN, MAFALDA
3532 LIDO AVE
WOODLAND HILLS, CA 91302

0248191 232590  S#0000805
NEEB, CLARKE A
2291 E STEWART RD
MIDLAND, MI 48640-8938


0248210 435110  S#0004424
NEET, RICHARD
MECKLER BULGER & TILSON LLP
123 N WACKER DR STE 1800
CHICAGO, IL 60606

0248210 435248  S#0004420
NEFF, GARY R
MECKLER BULGER & TILSON LLP
123 N WACKER DR STE 1800
CHICAGO, IL 60606

0248191 232628  S#0000296
NEHER, LISLE Q
320 N BRYAN ST
ARLINGTON, VA 22201-1421
```

Page 265 of 414

**SA0058**

# EXHIBIT F

SA0059

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |

AFFIDAVIT OF SERVICE BY POORMAN-DOUGLAS CORPORATION REGARDING
DEBTORS' NOTICE OF ENTRY OF CONFIRMATION ORDER AND OTHER KEY
RELEVANT DATES

I, Betina Wheelon, being first duly sworn, depose and say:

1.    I am over eighteen years of age and the statements contained herein are based on

my personal knowledge.  I am employed in the offices of Poorman-Douglas Corporation

("PDC"), claims and noticing agent of the United States Bankruptcy Court, Northern District of

Illinois, Eastern Division, in the above-captioned matter.

2.    In accordance with Article XV.G.3 of the Debtors' *First Amended Joint Plan of*

*Reorganization Pursuant To Chapter 11 of the United States Bankruptcy Code* and Rule

3020(c)(2) of the Federal Rules of Bankruptcy Procedure, I served or caused to be served the

Debtors' *Notice of Entry of Confirmation Order and Other Key Relevant Dates* (the "Notice"), a

copy of which is attached hereto as Exhibit I, by first-class mail, deposited with the United States

Postal Service with postage thereon fully prepaid on January 27, 2006 to each of the 66,306

parties listed on Exhibit II ;  and to each of the 64,624  parties listed on Exhibit III.

SA0060

3.    I further certify that on January 27, 2006, I caused PDC's agent, Financial Balloting Group, to deliver sufficient copies of the Notice by hand or by overnight courier to each of the brokerage firms, banks and/or agents (collectively, the "Nominees") identified on Exhibit IV hereto, to enable the Nominees to distribute the Notice to beneficial owners of the Debtors' equity securities. The names of the Nominees included on Exhibit IV hereto, and the number of customers represented by such Nominees, were determined by following the usual and customary procedures employed in annual meetings and other solicitations involving debt and/or equity securities traded on one of more of the national exchanges.  The Nominees holding the equity securities were determined from the records of The Depository Trust Company.

4.    As reflected in the certificate of service filed on January 25, 2006 (Docket #14946), on that same date the Notice was served on the Core Group and 2002 List pursuant to the Third Amended Notice, Case Management and Administrative Procedures approved in these Chapter 11 Cases.

Executed in Oregon, Washington this 2nd day of February 2006

_____
Betina Wheelon

STATE OF OREGON
COUNTY OF WASHINGTON

Subscribed and sworn to before me this 2nd day of February 2006  Betina Wheelon who states that the information contained in the foregoing is true and correct to the best of her knowledge, information and belief.

WITNESS my hand and official seal.

_____
Notary Public
In and for the State of Oregon

OFFICIAL SEAL
JAMES MONTGOMERY
NOTARY PUBLIC-OREGON
COMMISSION NO. 386746
MY COMMISSION EXPIRES NOV. 23, 2008

K&E 10938461 2

**SA0061**

# EXHIBIT I

SA0062

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| UAL CORPORATION, et al., [1] | Case No. 02-B-48141 |
| | (Jointly Administered) |
| Debtors. | |
| | Honorable Eugene R. Wedoff |

### NOTICE OF ENTRY OF CONFIRMATION ORDER AND OTHER KEY RELEVANT DATES

**Confirmation of the Plan.** Please take notice that the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") entered an order (the "Confirmation Order") on January 20, 2006 (the "Confirmation Date") confirming the *Debtors' Second Amended Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "Plan").[2] As set forth more specifically therein, the terms of the Plan and the Plan Supplement are effective immediately upon entry of the Confirmation Order and enforceable and deemed binding upon: the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the Holders of such Claims or Interests accepted or are deemed to have accepted the Plan); all entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein; each Person acquiring property under the Plan; and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

A copy of the Confirmation Order, which has the Plan attached thereto as **Exhibit A**, can be obtained from the Debtors' private website: http://www.pd-ual.com or by written request to the Debtors' Solicitation Agent: Poorman-Douglas Corporation, Attn: UAL Balloting, 10300 SW Allen Boulevard, Beaverton, Oregon 97005; telephone (877) 752-5527.

This Notice discusses certain key relevant future dates and deadlines with respect to the Plan. This discussion is supplemented by, and entirely subject to, the terms of the Confirmation Order and Plan themselves which shall govern in all events.

**Anticipated Effective Date.** The Plan's anticipated Effective Date is on or about February 1, 2006.[3]

**Exculpation Provision.** Please take further notice that the Plan has been modified to add the AFA Released Parties and the IAM 141 Released Parties as "Exculpated Parties." Specifically, Article X.G of the Plan provides as follows:

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtors (and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of

---

[1] The Debtors are the following entities: Air Wisconsin, Inc., Air Wis Services, Inc., Ameniti Travel Clubs, Inc., BizJet Charter, Inc., BizJet Fractional, Inc., BizJet Services, Inc., Cybergold, Inc., Domicile Management Services, Inc., Four Star Leasing, Inc., itarget.com, inc., Kion Leasing, Inc., Mileage Plus, Inc., Mileage Plus Holdings, Inc., Mileage Plus Marketing, Inc., MyPoints.com, Inc., MyPoints Offline Services, Inc., Premier Meeting and Travel Services, Inc., UAL Benefits Management, Inc., UAL Company Services, Inc., UAL Corporation, UAL Loyalty Services, LLC, United Air Lines, Inc., United Aviation Fuels Corporation, United BizJet Holdings, Inc., United Cogen, Inc., United GHS, Inc., United Vacations, Inc., and United Worldwide Corporation.

[2] All capitalized terms used, but not defined herein, shall have the meaning attributed to such terms in the Plan or the Disclosure Statement, as applicable.

[3] If the Effective Date is a date other than February 1, 2006, the Debtors will serve a notice of the final Effective Date on the 2002 List as defined in the Third Amended Notice, Case Management and Administrative Procedures approved in these Chapter 11 Cases. Any party wishing to be added to the 2002 List should follow the procedures set forth in the Third Amended Notice, Case Management and Administrative Procedures which can be viewed at the Debtors' private website: http://www.pd-ual.com.

Form H4081 v.0.01

the securities pursuant to the Plan, and therefore are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Nothing in this paragraph impairs the post-Effective Date Claims of the United States of America or any Governmental Unit thereof or the State of California with respect to police and regulatory powers, or to any cause of action or a claim under the Internal Revenue Code.

Objections to this specific Plan modification, if any, must be filed in accordance with the Third Amended Notice, Case Management and Administrative Procedures, by no later than February 10, 2006 and will be considered on February 17, 2006 at 9:30 a.m. or soon thereafter by the Bankruptcy Court, located at 219 S. Dearborn Street, Chicago, Illinois 60604.

**Administrative Claims Bar Date.** The deadline for filing proofs or requests for payment of Administrative Claims shall be thirty (30) days after the Effective Date for Entities other than the United States of America and all Governmental Units thereof and 180 days after the Effective Date for the United States of America and all Governmental Units thereof, unless otherwise ordered by the Bankruptcy Court and except with respect to DIP Facility Claims and Professional Claims.[4] Please see Article XI.D of the Plan for further information.

**Rejection Damages Bar Date.** All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to the Plan or otherwise, other than Municipal Bond Leases, if any, must be Filed with the Claims Agent and served upon counsel to the Debtors no later than thirty (30) days after the earliest of (i) the date of entry of an order (including, without limitation, the Confirmation Order) of the Bankruptcy Court approving such rejection, (ii) the date of service of a notice that the executory contract or unexpired lease has been rejected, and (iii) the effective date of rejection. All Proofs of Claim with respect to Claims arising from the conditional rejection of Municipal Bond Leases pursuant to the Plan must be Filed with the Claims Agent and served upon counsel to the Debtors no later than thirty (30) days after a conditional rejection becomes final pursuant to ARTICLE VII.E.2 or VII.E.3 of the Plan. Please see Article VII.J of the Plan for further information.

**Cure Bar Date for Assumed Executory Contracts.** Entry of the Confirmation Order constitutes approval of the assumption or conditional assumption of the executory contracts and unexpired leases to be assumed under the Plan as of the Effective Date, or as of a conditional assumption becoming final pursuant to ARTICLE VII.E.2 or VII.E.3 of the Plan, or, with respect to the Debtors' agreements with the City of Chicago, the earlier of (i) the Effective Date, or (ii) ninety (90) days after the Court's entry of the Confirmation Order, pursuant to Sections 365 and 1123 of the Bankruptcy Code. Except with respect to executory contracts and unexpired leases pursuant to which the Debtors and the relevant counterparties to such executory contracts and unexpired leases have stipulated in writing to payment of the Cure, all requests for payment of the Cure must be filed with the Claims Agent and served upon counsel to the Debtors on or before thirty (30) days after the Effective Date; provided, however, that Sabre Inc. shall be entitled to file such Claim for Cure up to forty-five (45) days after the Effective Date, without prejudice to its right to seek additional time to file such Claims for Cure; provided further, however, that the date for filing a request for payment of Cure with respect to any Municipal Bond Lease shall be thirty (30) days after a conditional assumption becomes final pursuant to ARTICLE VII.E.2 or VII.E.3 of the Plan. Please see Article VII.I of the Plan for further information.

**Fee Applications for Professional Claims.** Any professional seeking a final allowance of compensation or reimbursement of expenses pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code shall, on or before March 6, 2006, file a final fee application. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Final Orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court.

---

[4] Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Sections 503(b)(3), (4), and (5) of the Bankruptcy Code must file an application with the Bankruptcy Court and serve such application on counsel for the Debtors and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Third Amended Notice, Case Management and Administrative Procedures, on or before the Administrative Claim Bar Date or be forever barred from seeking such compensation or expense reimbursement. Please see Article XI.C of the Plan for further information.

# EXHIBIT II

SA0065

Debtor:            UAL Corporation
Description:       Confirmation Notice
Mailing Number:    0601D
Notices Mailed By: 01/27/2006   and sent to following creditors:

0248191 385982  S#0063293
IDINE
TRANSMEDIA
20 N WACKER DR
CHICAGO, IL 60606-2806

0248191 385983  S#0011892
IDINE REWARDS
IDINE REWARDS NETWORK
11900 BISCAYNE BLVD FL 4
NORTH MIAMI, FL 33181-2743

0248191 385984  S#0011893
IDINE REWARDS NETWORK INC
GENE M. HENDERSON
11900 BISCAYNE BLVD
NORTH MIAMI, FL 33181-2743

0248191 385985  S#0062121
IDIOM TECHNOLOGIES INC
125 CAMBRIDGE PARK DRIVE
CAMBRIDGE, MA 02140

0248191 94550  S#0006684
IDOL JR, WILLIAM E.
3263 WHITE BARN CT
OAK HILL, VA 20171-3338

0248191 385993  S#0064244
IDT TELECOM-DATA
THERESA BERECCHI
137 WORLD TRADE CTR
SAN FRANCISCO, CA 94111-4286

0248191 444810  S#0058142
IDTRIP SERVICES, INC.
ATTN: GENERAL COUNSEL
237-1857 WEST 4TH AVE
VANCOUVER, BC V6J 1M4
CANADA

0248191 441209  S#0030545
IEC INTERNATIONAL
ATTN: GENERAL COUNSEL
7523 CALMONT AVE
FORT WORTH, TX 76116-4047

0248191 385996  S#0030546
IEC INTERNATIONAL
ATTN: MICHELLE RICHARDSON
VENDOR ON HOLD PER SCOTT SHROYER
7523 CALMONT AVE
FORT WORTH, TX 76116-4047

0248191 438107  S#0030547
IEC INTERNATIONAL INC AV SYS
7523 CALMONT AVE
FT WORTH, TX 76116-4047

0248191 385997  S#0057863
IEC INTERNATIONAL LTD.
GEORGE E MARTIN
MEAD PARK MEADFIELD ROAD
LANGLEY, BERKSHIRE   SL3 8AL
UNITED KINGDOM

0248191 385998  S#0057864
IEC INTERNATIONAL LTD.
T. CARLIS
MEAD PARK MEADFIELD ROAD
LANGLEY, BERKSHIRE   SL3 8AL
UNITED KINGDOM

0248191 8139  S#0010247
IEM INC
PO BOX 101398
ATLANTA, GA 30392-1398

0248191 54076  S#0030037
IER INC
2015 MIDWAY RD STE 118
CARROLLTON, TX 75006

0248191 118355  S#0030046
IER INC
ATTN: BERNARD SANGUINETTI VP
2015 MIDWAY RD STE 118
CARROLLTON, TX 75006-4964

0248191 441210  S#0030038
IER INC
ATTN: GENERAL COUNSEL
2015 MIDWAY RD
SUITE 118
CARROLLTON, TX 75006

0248191 453676  S#0020343
IER, INC
C/O: BILL LEOF
921 HEDGEWOOD DR
PALATINE, IL 60067

0248191 16239  S#0040501
IFCO ICS-WESTERN LLC
PO BOX 2075
MONTEBELLO, CA 90640-1475

0248191 441211  S#0002780
IFORMATION GROUP
ATTN: GENERAL COUNSEL
ROBERT TRUDEAU
79 MADISON AVE STE 200
NEW YORK, NY 10016-7802

0248191 438109  S#0063427
IFR AMERICAS INC
PO BOX 73267
CHICAGO, IL 60673-7267

0248191 121778  S#0029261
IFR SYSTEMS INC
10200 W YORK ST
WICHITA, KS 67215-8935

SA0066

Debtor:            UAL Corporation
Description:       Confirmation Notice
Mailing Number:    0601D
Notices Mailed By: 01/27/2006   and sent to following creditors:

```
0248191 396290  S#0028078
NAVIGANT CONSULTING INC
135 S LA SALLE ST DEPT 3720
CHICAGO, IL 60674-1000

0248191 396296  S#0061404
NAVIGANT INTERNATIONAL
RICHARD FURNESS
6 - 8 LUKE STREET
LONDON EC2A 4XY
UNITED KINGDOM

0248191 416844  S#0024168
NAVIGATO & SALVATO
53 W JACKSON
STE 1750
CHICAGO, IL 60604

0248191 427311  S#0018266
NAVITAIRE INC
ATTN: FRANK KUHAR
901 MARQUETTE AVE STE 1600
MINNEAPOLIS, MN 55402-3210

0248191 396319  S#0043833
NAVTECH WEATHER SYSTEMS INC
2340 GARDEN RD STE 207
MONTEREY, CA 93940-5347

0248191 396323  S#0007941
NAVY LEAGUE OF THE UNITED STATES
SCOTT THURSTON
2300 WILSON BLVD
ARLINGTON, VA 22201-3308

0248191 396326  S#0060948
NAYAK REISEN AG
MR MARIO GYSIN
STEINENGRABEN 42
BASEL 4001
SWITZERLAND
```

```
0248191 396295  S#0032700
NAVIGANT INTERNATIONAL
ATTN: DAVID M RICH
84 INVERNESS CIR E
ENGLEWOOD, CO 80112-5314

0248191 442352  S#0058024
NAVIGANT INTERNATIONAL CANADA
ATTN: GENERAL COUNSEL
2810 MATHESON BLVD E 3RD FLR
MISSISSAUGA, ON L4W 4X7
CANADA

0248191 442354  S#0003156
NAVIGATORS INSURANCE CO
ATTN: GENERAL COUNSEL
ONE PENN PLAZA
NEW YORK, NY 10119

0248191 32888  S#0059817
NAVRAS TRAVELS PVT LTD
B-6, RAMANASHREE CHAMBERS
37, LADY CURZON ROAD
BANGALORE
INDIA

0248191 396321  S#0006673
NAVY FEDERAL CREDIT UNION
C/O LAUREN LLOYD
13211 LAZY GLEN LN
OAK HILL, VA 20171-2348

0248191 442356  S#0008600
NAVY MATERIAL TRANSPORT OFC
ATTN: GENERAL COUNSEL
PO BOX 8309
NORFOLK, VA 23503-0309

0248191 232512  S#0032999
NAZE, JAMES P.
28 DESERT WILLOW LN
LITTLETON, CO 80127-3549
```

```
0248191 442351  S#0032653
NAVIGANT INTERNATIONAL
ATTN: GENERAL COUNSEL
84 INVERNESS CIRCLE E
ENGLEWOOD, CO 80112

0248191 442353  S#0024082
NAVIGANT INTERNATIONAL/NO CENTRAL
ATTN: GENERAL COUNSEL
55 W MONROE ST
38TH FL
CHICAGO, IL 60603-5012

0248191 442355  S#0051461
NAVITAIRE
ATTN: GENERAL COUNSEL
6029 34TH ST
N HIGHLANDS, CA 95660-4206

0248191 453347  S#0043824
NAVTECH
C/O: ATTN: DEREK DAWSON
2340 GARDEN RD
STE 102
MONTEREY, CA 93940

0248191 396322  S#0007816
NAVY FEDERAL CREDIT UNION
JAMIL AHMED
ONE SECURITY PLACE
PO BOX 3600
MERRIFIELD, VA 22119-3600

0248191 232501  S#0021642
NAWROCKI, VERA D.
12161 TULIPTREE LN
HUNTLEY, IL 60142-7510

0248191 442358  S#0007617
NB CONSULTANTS INC
ATTN: GENERAL COUNSEL
PO BOX 11309
BURKE, VA 22009
```

SA0067

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| *In re* | ) | **Chapter 11** |
| | ) | |
| **UAL CORPORATION**, *et al.*, | ) | **Case No. 02 B 48191** |
| | ) | **(Jointly Administered)** |
| *Reorganized Debtors.* | ) | |
| | ) | **Honorable Eugene R. Wedoff** |
| | ) | |
| | ) | **Hearing Date: January 23, 2008** |
| | ) | **Hearing Time: 10:00 a.m.** |

---

### OBJECTION OF IFTIKHAR NAZIR AND PHIL HOROWITZ TO UNITED'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER PERMITTING IFTIKHAR NAZIR TO PROCEED WITH LITIGATION AGAINST UNITED

NOW COME IFTIKHAR NAZIR ("NAZIR") and PHIL HOROWITZ ("HOROWITZ"), by and through their undersigned counsel, and for their objection ("Objection") to United's Motion for Reconsideration of the Court's Order Permitting Iftikhar Nazir to Proceed with Litigation Against United (the "Motion to Reconsider"), state as follows:

### I.      INTRODUCTION

United's Motion to Reconsider takes primary aim at some of this Court's underlying reasons – particularly its analysis of 28 U.S.C. §959(a) – for denying United's original motion for contempt and sanctions against Nazir and Horowitz (the "Contempt Motion"). But almost unbelievably, United continues to request that the Court hold Nazir and Horowitz in contempt and, presumably, that the Court – which in its original consideration of this matter found Nazir's conduct understandable and appropriate – impose sanctions on them.[1] United's unrelenting pursuit of pain and penalties against Nazir and his counsel might be amusing if it were not for its abusive position and the disproportionate position of the parties – ***United***, a multi-billion dollar

---

[1]      To date, United has not filed the affidavit required by the Local Rules that would set forth in detail the basis for the amount being sought as sanctions, but Nazir and Horowitz estimate it to be at least several hundred thousand dollars.

SA0068

company coming out of bankruptcy and aggressively litigating for over a year-and-a-half in a jurisdiction where it previously had been found to have engaged in similar discrimination,[2] and *Nazir* (and his attorney), an individual who has been fired by United (and remains unemployed) because, he believes, he was harassed and discriminated against on the basis of his color, national origin and religion.[3]  Even if United were correct that this Court somehow erred in its application of section 959(a) or in other ways (which it did not), given the history of this motion and of the proceedings before the California Department of Fair Employment and Housing and the California state court, a finding of contempt and the imposition of sanctions should be immediately and permanently taken off the table.

In any event, the Court need not reconsider its denial of the Contempt Motion.  Not only are there numerous other bases supporting the Court's denial of the Contempt Motion, but United's reading of both sections 959(a) and 11 U.S.C. §1141(d) are overbroad and incorrect.  In particular, United's argument that the Court's application of section 959(a) in this case places that provision squarely at odds with section 1141(d) ignores the logical harmonization of the two sections and gives more effect to section 959(a) than is necessary or appropriate, particularly when one considers the type of tortious conduct claims that section 959(a) was enacted to preserve.  Surely United cannot seriously argue (although it seems to) that section 959(a) does not authorize the filing of actions such as Nazir's in state proceedings or that section 1141(d) discharges all such claims if not fully adjudicated before plan confirmation.  Furthermore, even under United's arguments regarding the appropriate interplay between sections 959(a) and 1141(d), Nazir's claims would survive confirmation of United's chapter 11 plan (the "Plan").  In

---

[2]     See e.g., Amhad Abu-Aziz v. United Air Lines, Inc., State of California Court of Appeal, Case No. A079166 (1999) (affirming jury verdict).

[3]     It is questionable whether Nazir and Horowitz ought to be the parties that bear the cost of defending against the Contempt Motion and the Motion to Reconsider and they reserve all rights they may have against United for payment or reimbursement of such costs.

SA0069

particular, contrary to United's assertions, Nazir's discrimination, harassment, and discharge claims were filed in California before Plan confirmation, United was on full notice of them and has vigorously defended them, and they were preserved by United's Plan.

Moreover, regardless of and in addition to any arguments concerning section 959(a), there are other reasons that the Court should reach the same result it did on the Contempt Motion.  For example, United failed to give Nazir notice of key events in its bankruptcy case, including confirmation of the Plan and the administrative claim bar date, which it now claims as the basis for discharging Nazir's claims.  While United made a half-hearted attempt to argue that it provided Nazir *notice of the confirmation hearing, confirmation of the Plan* and *the administrative claims bar date* by sending him a *notice of the hearing on the disclosure statement*, United does not and cannot seriously contend that it gave Nazir appropriate or effective notice of his opportunity to object to confirmation of the Plan or of any relevant bar dates set forth in the Plan.  It certainly did not give him the same notice it gave tens of thousands of other creditors and parties in interest it sought to bind to its Plan and the administrative claims bar date.  This lack of notice to a known claimant, by itself, as well as United's participation in the California litigation for over a year-and-a-half before filing the Contempt Motion, are sufficient to support the Court's original denial of United's contempt motion and order to continue the California litigation.

## II.    LEGAL ARGUMENT

### A.    Even if the Court Were to Reconsider Any Section 959(a) Reasons Underlying its Denial of the Contempt Motion, a Finding of Contempt and the Imposition of <u>Sanctions Would Not Be Appropriate.</u>

Even if this Court were to reconsider the reasons underlying its denial of the Contempt Motion, it should continue to decline to find Nazir and Horowitz in contempt of court or impose sanctions on them.  Here, there are at least two relevant points.

3

SA0070

*First,* as discussed in more detail in Nazir and Horowitz's objection (the "Contempt Objection") to the Contempt Motion, a court's power to hold a party in civil contempt should be exercised only when (i) the order the party allegedly failed to comply with is clear and unambiguous, (ii) the proof of noncompliance is clear and convincing, and (iii) the party has not diligently attempted in a reasonable manner to comply.  In re Chief Executive Officers Clubs, 359 B.R. 527, 535 (Bankr. S.D.N.Y. 2007).  See also King v. Allied Vision Ltd., 65 F.3d 1051, 1058 (2nd Cir. 1995); Monsanto Co. v. Haskel Trading, Inc., 13 F.Supp.2d 349, 363 (E.D.N.Y. 1998).  Obviously, as shown by the Court's original decision, the application of the confirmation order (and the applicability of section 1141(d) here) is not so "clear and unambiguous" as to justify a finding of contempt and the imposition of sanctions.

*Second*, as the Court stated at the hearing on the Contempt Motion, the imposition of sanctions on Nazir and Horowitz for pursuing Nazir's claims would be inappropriate because United has been engaged in litigation on the merits with Nazir in the California court for some time -- over a-year-and-a-half -- and has not previously sought to enjoin the litigation on the basis of the discharge injunction.  See 12/19/07 Tr. at 13 ("United's decision not to [seek enforcement of the discharge injunction] and instead to engage in litigation on the merits in the California case inclines me not to impose any civil liability on respondents for the violation of the discharge injunction that took place with respect to the pre-petition claims").  The same reasoning would apply even if the Court were to determine that there was a violation of the discharge injunction with respect to Nazir's postpetition claims (which, as argued below, there was not).

United's argument that it raised the issue of the discharge injunction in the California litigation at the outset of that litigation and, therefore, that the imposition of sanctions can be justified, is vastly overstated.  The first time it was arguably raised was as one of 24 affirmative defenses asserted by United in its answer filed on November 2, 2006.  United did not mention

SA0071

the discharge injunction in that affirmative defense, but vaguely and summarily stated only that any claims against it "are barred and/or subject to the exclusive jurisdiction of the bankruptcy court."[4]  It was then not until United filed its summary judgment motion papers in the California Litigation on August 30, 2007, which covered numerous other issues, that any further explanation of its defense was raised.  Shortly after the December 19, 2007 hearing in this Court on the Contempt Motion, however, United withdrew that argument from its summary judgment motion.  In any event, if United really thought Nazir was violating the discharge injunction, it could have and should have sought to enjoin prosecution of the litigation at the outset (in this court or in the California court) rather than merely vaguely raising the argument in the normal course of litigation while discovery, motion practice, and trial preparation continued.  United did not even bother to raise the issue separately or directly with Nazir or Horowitz, which could have easily been done with a phone call or letter on the subject, and instead continued to incur the fees which it now seeks from Nazir and Horowitz.  Nazir and Horowitz should not be penalized for United's failure to take the most basic of steps, even if United were correct (which it is not) in its arguments concerning sections 959(a) and 1141(d).[5]

_____

[4]       That affirmative defense could hardly be read to provide explicit notice to Nazir that United believed his claims to have been discharged in its bankruptcy proceedings.  It reads, in full:

> AS A FOURTH, SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE, Defendant United Air Lines, Inc. alleges that to the extent Plaintiff's claims are based on events that occurred prior to Defendant filing its bankruptcy petition or before Defendant emerged from bankruptcy, such claims are barred *and/or* subject to the exclusive jurisdiction of the bankruptcy court (emphasis supplied).

As the emphasized language indicates, when United filed its answer even it seemed to be unsure of whether Nazir's claims were barred by United's discharge or whether Nazir merely had to assert those claims in this Court.  It was apparently only after 18 months of litigation and unsuccessful attempts at settlement that United seems to have finally come to the conclusion that the Plan barred Nazir's claims.

[5]       United admits in the Motion to Reconsider that it believes many former employees have violated the discharge injunction and that it exercises its discretion in determining which former employees should be the subject of a motion for contempt and sanctions in this Court.  Motion to Reconsider, at 14.  United further claims that it "has always asserted discharge as a defense and has attempted to resolve all such cases (in part *because* of discharge) before seeking this Court's assistance."  Id. (emphasis in original).  United's admission is, in some ways, stunning.  Not only does United admit that it intentionally has allowed extensive and expensive state court litigation to proceed

SA0072

**B.** **Section 959(a) Specifically Authorized Nazir to File His Claims Against United in California Notwithstanding Section 1141(d).**

    **1.** **Section 959(a) Is a Narrow Exception to the Barton Rule and Was Enacted Primarily to Preserve Postpetition Tort and Other Claims Like Nazir's Against a Debtor.**

In its Motion to Reconsider, United contends that the Court's interpretation of section 959(a) "prohibits a debtor from receiving a discharge for post-petition conduct in the operation of the debtor's business." Motion to Reconsider, at 8. United then identifies an alleged conflict between section 1141(d) and this Court's interpretation of section 959(a): according to United, the Court's reading of section 959(a) "constructively amends Section 1141(d)(1)(A) to read that a discharge applies to 'any debt that arose before the petition date; rather than, as the statute says, **'any debt that arose before the date of such confirmation.'"** Motion to Reconsider, at 8 (emphasis in original). But the courts have held that: (i) the "carrying on business" language in section 959(a) is to be construed narrowly and (ii) section 959(a) was enacted to deal primarily with tort claims against a debtor. Taking these factors into consideration, it becomes clear that United's argument that the Court has effectively changed the words in section 1141(d) "before the date of such confirmation" to "before the petition date" makes too much of section 959(a).

Section 959(a) is a narrow exception to the Barton rule.[6] As courts have recognized, the phrase "carrying on business has been interpreted narrowly." Greenblatt v. Richard Potasky Jeweler, Inc. (In re Richard Potasky Jeweler, Inc.), 222 B.R. 816, 823 (Bankr. S.D. Ohio 1998).

---

without seeking to enjoin such actions, but it admits to selective, strategic use of that argument. Nazir is aware of only two employees that have been the subject of a contempt/sanctions motion in this Court: himself and Cynthia Hou, two former employees of Pakistani descent. United has admittedly singled out Nazir and Hou - from among all of its former employees it believes are violating the discharge injunction - for the special treatment of being the object of a contempt and sanctions motion in this Court. United does not say why it decided to single out Nazir. Indeed, the decision to single him out at this time seems odd, particularly given that United has raised (and then withdrawn) the discharge issue in the California court. But one can surmise that United has been unsuccessful in attempting to resolve Nazir's case on terms acceptable to it, and that the threat of a finding of contempt and the imposition of sanctions from United's home bankruptcy court might force Nazir to settle on terms acceptable to United, in effect using this Court's contempt and sanctions power as a sword in the California litigation.

[6]    The Motion to Reconsider discusses the Supreme Court's decision in Barton v. Barbour, 104 U.S. 126 (1881) and Nazir and Horowitz will not repeat the origins of the Barton rule here.

6

"Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." Id. (quoting Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1241 (6th Cir. 1993). See also Carter v. Rodgers, 220 F.3d 1249, 1254 (11th Cir. 2000) (holding that section 959(a) does not apply to breaches of fiduciary duty in the administration of a bankruptcy estate); Mangun v. Bartlett (In re Balboa Improvements Ltd.), 99 B.R. 966, 970 (9th Cir. BAP 1989) (same).

Rather, section 959(a) "is intended to permit actions redressing torts committed in furtherance of the bankrupt's business operations and is not cast to foster interference '(with) the use, control, maintenance and operation of the bankrupt's property . . .'" In re American Associated Systems, Inc., 373 F. Supp. 977, 979 (E.D. Ky. 1974) (citation omitted). See also G. Weeks Securities, Inc., 89 B.R. 697, 702 (Bankr. W.D. Tenn. 1988) (same); In re Balboa Improvements Ltd., 99 B.R. at 970 (same). Indeed, this Court recognized in Schechter v. State of Illinois (In re Markos Gurnee Partnership), 182 B.R. 211 (Bankr. N.D. Ill. 1995) (Wedoff, J.) that the predecessor to section 959(a) was enacted in 1887 "to alleviate the impact that the [Barton] rule had on those injured by the operations of large enterprises in receivership." Id. at 221. As the Markos Gurnee Partnership case further noted, a 1900 Supreme Court decision "reflected on the purpose" of the predecessor to section 959(a):

> This act . . . gave the citizen the unconditional right to bring his action in the local courts, and to have the justice and amount of his demand determined by the verdict of a jury. He ceased to be compelled to litigate at a distance, or in any other forum, or according to any other course of justice, than he would be entitled to if the property or business were not being administered by the Federal court.

Gableman v. Peoria, Decatur & Evansville Ry., 179 U.S. 335, 338 (1900).

Stepping back and taking all of this into account, it becomes clear that the Court's application of section 959(a) to Nazir's postpetition claims was right on the mark. And contrary

SA0074

to United's assertions, the Court's interpretation of section 959(a) does not obliterate section 1141(d). Rather, section 959(a) permits certain postpetition claims – and only those claims – to be asserted in a claimant's local court, without interference from the bankruptcy court and without the need for complying with any additional procedures for submitting an administrative expense claim in the bankruptcy case.[7]

Indeed, it is United's arguments that do the most harm to the provisions at issue here. As discussed below, even United recognizes that its proposed reconciliation of sections 959(a) and 1141(d) would require the Court to read additional language into section 959(a) that would (i) mandate that a section 959(a)-type claim be filed prior to confirmation (which could even be before the expiration of the state statute of limitations) and/or (ii) require that the claim be explicitly preserved by a debtor's plan. But section 959(a), a relatively straight forward provision, does not impose these restrictions on a postpetition claimant covered by it. It permits debtors in possession to be sued outside of the bankruptcy court under certain circumstances. Period. If section 1141(d) can discharge those claims without some provision in the plan for them, as United argues, then section 959(a) in effect becomes a nullity.[8] Section 1141(d) can no more discharge those claims and leave them unpaid than it can discharge, say, priority tax claims and leave them unpaid under a plan. Moreover, to the extent United's reading would allow for a

---

[7]    United takes some umbrage at the fact that the Court based its decision on the Contempt Motion on section 959(a) when "neither United nor Nazir raised Section 959(a) in prior briefing." Motion to Reconsider, at 2. But while Nazir did not explicitly reference section 959(a) in its Contempt Objection, the Contempt Objection did question whether the type of claims held by Nazir, which sound in tort, were of a type that needed to be addressed by the Plan in order to be preserved or could be separately filed in state court. See Contempt Objection, at 14.

[8]    In the Motion to Reconsider, United states that "every court that has considered the fact pattern presented here – an employee suing for discrimination that purportedly occurred during a bankruptcy case (but prior to confirmation) – has held that the claim is discharged by Section 1141(d)." Motion to Reconsider, at 5. But as even United concedes, section 959(a) "was not explicitly mentioned by these courts." Id. at 6. Because these cases do not address the interplay between sections 959(a) and 1141(d), they are not particularly helpful here. And in the Williams v. Kmart Corporation case appended to the Motion to Reconsider, the court there notes that the plaintiff "failed to respond to this court's Order to show cause," which seemingly means that court only had the views of one of the litigants (the debtor) on the application of section 959(a) in that case. For the reasons discussed in this Objection, Nazir and Horowitz submit that the Williams court may have reached an inapplicable conclusion.

SA0075

claim filed outside the bankruptcy court before confirmation to be discharged if not fully adjudicated pre-confirmation, it cannot be correct.

> **2.    Even if United Were Correct About the Interaction Between Sections 959(a) and 1141(d) in this Case, Nazir's Claims Nevertheless Survived Confirmation of the Plan.**

On the one hand, United's argument concerning the appropriate interplay between sections 959(a) and 1141(d) seems to boil down to this: "The only way to give both provisions meaning consistent with their terms is to permit lawsuits filed against a debtor for conduct during a bankruptcy case to be filed and prosecuted in other courts without leave of court, so long as such suits are: (1) filed prior to confirmation; *and/or* (2) explicitly preserved in a debtor's plan of confirmation [sic]."  <u>Motion to Reconsider</u>, at 7 (emphasis supplied).  Thus, United seems to suggest that a postpetition claim survives if it is *either* filed prior to confirmation *or* preserved in the debtor's plan.  But in another part of the Motion to Reconsider United seems to suggest that section 959(a) preserves a claim *only* where it is preserved by the plan or is an exception to discharge listed in section 1141(d), even if the claim is filed prior to confirmation ("Section 959(a) . . . applies only to suits that are *not* discharged by Section 1141(d) or otherwise treated by the plan.").  <u>Motion to Reconsider</u>, at 8 (emphasis in original).  Regardless of United's ultimate position, Nazir's claims survived confirmation of the Plan under either test.

*First,* if United is arguing that a postpetition creditor like Nazir must either file an action prior to confirmation *or* have that action preserved by the plan, Nazir's claims meet that test.  ***Nazir's action against United was commenced prior to confirmation of the Plan***.  In the Motion to Reconsider, United gives the Court the impression that Nazir did not commence any proceedings against United until after United's Plan was confirmed.  <u>See Motion to Reconsider</u>, at 2 ("Section 959(a) does not literally provide . . . creditors with rights to sue debtors for alleged misconduct during a bankruptcy case *after* a debtor's plan of reorganization has been confirmed

9

**SA0076**

and the debtor has been discharged.") (emphasis in original).  Prior to confirmation of the Plan on January 20, 2006, Nazir commenced, as required by California state law, a proceeding for discriminatory termination and harassment against United in the appropriate California state agency – the California Department of Fair Employment and Housing (the "Department of Fair Employment") – which is the first predicate step leading to the California state court (the "California Court").

Under California state law, an employee alleging discrimination or harassment by his employer in violation of California's Fair Employment and Housing Act must first file a complaint with the Department of Fair Employment and exhaust his administrative remedies before that Department.  See Commodore Home Systems, Inc. v. Superior Court, 32 Cal.3d, 211, 213-214 (1982) (holding that an employee may sue an employer in superior court for violations of the California Fair Employment and Housing Act only after exhaustion of remedies in the Department of Fair Employment); Rojo v. Kliger, 52 Cal.3d 65, 82-84 (1990) (same).  If the Department of Fair Employment does not complete its investigation within 150 days, it must promptly give notice to the claimant that the claimant may request the issuance of a "right to sue" letter.  Id. at 72.  See also Cal. Gov't Code §12965.  This letter permits the claimant to move his action against the employer to state court within one year of the date of the issuance of the notice.  Id.

Nazir complied with California law by filing a complaint with the California Department of Fair Employment on October 3, 2005, prior to confirmation of United's Plan.[9]  On April 7, 2006, the Department of Fair Housing provided Nazir notice that its investigation was unlikely to

---

[9]       A copy of Nazir's complaint with the Department of Fair Employment was attached to the Contempt Objection at Exhibit B.  For ease of reference, it is also attached hereto as Exhibit A.

SA0077

be concluded within 150 days and offered to issue a right to sue letter at Nazir's request.[10] Nazir made such a request and received permission from the Department of Fair Employment to move his action to the California Court on April 13, 2006, which was after confirmation of United's Plan, as well as after the administrative claims bar date.[11] He filed the state court complaint on July 7, 2006. This should be sufficient if, as United argues, section 959(a) requires that an action must be filed prior to confirmation.

A contrary rule would lead to absurd results. Surely it is not the case that a creditor with a postpetition claim properly filed in an appropriate forum loses any right to that claim if plan confirmation occurs before all state administrative proceedings are finalized. United seems to argue that if the debtor manages to confirm a plan before a tort claimant's administrative or state court remedies are exhausted, the debtor wins and the claims are discharged. It is races to the courthouse like this that the Bankruptcy Code was enacted to avoid.

*Second*, even if United is really arguing that a creditor must both file a claim prior to confirmation *and* that the plan must also explicitly preserve the claim,[12] Nazir meets that test also. For the reasons discussed above, Nazir meets the first prong of the test. As for the second part of the test, under the Reading Co. v. Brown line of cases, Nazir has, at worst, an

---

[10]    A copy of the notice from the Department of Fair Employment to Nazir is attached hereto as Exhibit B.

[11]    A copy of the letter from the Department of Fair Employment authorizing Nazir to commence a state court proceeding against United is attached hereto as Exhibit C.

[12]    It is not clear how United's proposed requirement that the plan "explicitly" preserve the claim would play out in practice. Assume that a postpetition creditor with a claim of the type covered by section 959(a) files a lawsuit in state court against a debtor prior to confirmation of the plan. Assume further that the creditor gets notice of the confirmation hearing, reviews the plan, and notices that his claim is not "explicitly" preserved in the plan. What is the creditor to do? Request that the plan be amended to specifically preserve his claim? Surely, most debtors would be unlikely to do this voluntarily. Should the creditor then object to confirmation of the plan, on the basis that it does not explicitly preserve his claim? If so, what standard is the Court to use in deciding that objection? What if the court overrules his objection? Under United's proposed test, the creditor is out of luck – his claim has been discharged. But is a plan that fails to explicitly preserve a particular section 959(a) claim, or all section 959(a) claims, even confirmable? Would a plan that purports to preserve all section 959(a) claims be "explicit" enough under United's proposed test if it didn't separately identify or list those claims? At bottom, United's proposed reconciliation of sections 959(a) and 1141(d) raises more questions that it answers.

SA0078

administrative claim under the Plan for any harassment or discrimination that took place postpetition and for his termination, which also took place postpetition. See Reading Co. v. Brown, 391 U.S. 471 (1968). See also Bereth v. Sparks, 51 F.2d 441, 442 (7th Cir. 1931) ("[d]amages for injuries to persons or property during the receivership, caused by the torts of the receiver's agent and employees, are classed as a part of the operating expenses of the corporation."). United's Plan expressly provides for and preserves administrative claims. See Plan, at §II.A.[13] Indeed, if it did not, it would not be confirmable. See 11 U.S.C. §1129(a)(9). See also State of Illinois, Department of Revenue v. Schechter, 195 B.R. 380, 385 (N.D. Ill. 1996) (stating that a chapter 11 plan must propose to pay administrative expenses in full). Thus, the Plan preserved Nazir's claims if such preservation is even necessary.

In addition to preserving administrative claims, the Plan also set a bar date for filing administrative claims. And in the Motion to Reconsider, United argues that in order to qualify for administrative treatment, a creditor must have filed a claim by the bar date and, further, that "administrative bar dates are enforceable." Motion to Reconsider, at 9. But even assuming that a creditor with a claim against a debtor covered by section 959(a) is required to file a claim with a bankruptcy court, which would seem to be an unnecessary act given that the creditor has already instituted a formal action against the debtor outside of bankruptcy court, this cannot be the case where the debtor fails to provide the creditor with notice of that bar date, as happened here, and as is discussed in more detail below as well as in the original Contempt Objection.

---

[13] Section II.A of the Plan provides, in pertinent part: "[e]ach holder of an Allowed Administrative Claim shall be paid in full satisfaction, settlement, release and discharge of the full unpaid amount of such Allowed Administrative Claim in Cash . . ." and that "Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases . . . shall be paid and/or performed in the ordinary course of business in accordance with the terms and conditions of any agreements, course of dealing, course of business, or industry practice relating thereto." Plan, §II.A.

SA0079

**C.    Reasons Other Than Section 959(a) Also Justify the Denial of the Contempt Motion and the Continuation of the California Litigation.**

As enumerated in the Contempt Objection, there are other bases than section 959(a) that also justify the Court reaching the exact same result on the Motion to Reconsider as it did on the original Contempt Motion. Most importantly, United failed to give Nazir appropriate notice of (i) the confirmation hearing, (ii) confirmation of the Plan, and (iii) the administrative claims bar date. Given this lack of notice, it would be inappropriate to force Nazir to stop pursuing those claims.

Among other things, Nazir and Horowitz argued in their Contempt Objection that this lack of notice is fatal to United's position that Nazir's claims were discharged, and Nazir and Horowitz will not repeat those arguments at length, but will present a short summary of them here.[14]

No Notice of Confirmation Hearing.

It is black letter law that claims may not be extinguished in bankruptcy unless the holder of the claim is given proper notice of the confirmation hearing:

> We hold that notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution.

Reliable Electric Co., Inc. v. Olson Construction Co., 726 F.2d 620, 623 (10th Cir. 1984). See also Dalton Dev. Project #1 v. Unsecured Creditors Committee (In re Unioil), 948 F.2d 678, 683 (10th Cir. 1991) (holding that a "Chapter 11 debtor bears the burden of providing formal notice of the confirmation hearing to a known creditor before that creditor's claim may be discharged in bankruptcy") (citation omitted); In re Pettibone Corp., 162 B.R 791, 808 (Bankr. N.D. Ill. 1994) ("[t]he discharge of a claim without reasonable notice of the confirmation hearing is violative of

---

[14]    Nazir and Horowitz incorporate into this Objection by reference the arguments made in section III.D.1(i) (pp. 8-12) of their Contempt Objection.

SA0080

the Fifth Amendment of the United States Constitution") (citation omitted). United never gave Nazir notice of the confirmation hearing and, thus, neither his prepetition nor postpetition claims can be extinguished by the Plan and Confirmation Order. In neither the Contempt Motion, its reply to the Contempt Objection (the "Contempt Reply") nor the Motion to Reconsider does United seriously dispute this lack of notice to Nazir.[15] As noted in the Contempt Objection, the affidavit of service for the notice of the confirmation hearing and the deadline to object to confirmation filed by United's noticing agent does not list Nazir as a person who received such notice.

 <u>No Notice of Bar Date.</u>

  Nazir's claims relating to postpetition conduct by United (including Nazir's firing) also were not discharged because United was on notice of Nazir's postpetition claims but did not give notice to Nazir of any bar date for filing administrative claims, which Nazir's claims are at worst. Again, neither in the Contempt Motion, the Contempt Reply, nor the Motion to Reconsider does United dispute that Nazir did not receive such notice. Like the affidavit of service for notice of confirmation and the deadline to object to confirmation, the affidavit of service for the notice of confirmation of United's Plan (which also included notice of the administrative claims bar date) filed by United's noticing agent does not list Nazir as a person who received such notice.

  As Judge Katz's decision in the <u>S.N.A. Nut Co.</u> case explains:

---

[15] In the Contempt Reply, United argued that because it provided Nazir with notice of the hearing on the Disclosure Statement, it provided effective notice of the hearing on confirmation of the Plan and the administrative claims bar date set by the Plan. United's argument goes something like this: "United sent Nazir a notice of the hearing on the Disclosure Statement; that notice indicated that the Plan and Disclosure Statement could be found online or by contacting United's solicitation agent for a hard copy; had Nazir done this, he could have read the Plan and Disclosure Statement and discerned when the confirmation hearing would occur; he also could have discerned that the administrative claims bar date would be 30 days after the effective date of the Plan; the effective date would likely be shortly after the date of the scheduled confirmation hearing (and confirmation hearings are never continued) because everybody knows that a confirmation order becomes final after the expiration of 10 days after its entry on the docket, if no appeal is filed or, that if an appeal is filed, the condition to the occurrence of the effective date in the Plan that the confirmation order be a final order can be waived by the debtors if they first consult with the creditors' committee. . . ." Please. If United really believed this, it wouldn't have provided tens of thousands of people and entities – at significant cost to the estates – additional notices of (i) the confirmation hearing and (ii) confirmation of the Plan and the administrative claims bar date.

SA0081

> [I]n cases under Chapter 11 of the Code involving corporate debtors, creditors which are known to the debtor must be provided with actual notice of the relevant bar dates. Actual knowledge of the pendency of the bankruptcy by such a creditor is insufficient to satisfy due process.

In re S.N.A. Nut Co., 198 B.R. 541, 544 (Bankr. N.D. Ill. 1996) (citations omitted).

Courts seem to agree on the consequences of a debtor's failure to give a creditor notice of a relevant bar date. Numerous published cases hold that pre-confirmation claims are not barred by discharge in bankruptcy if the party did not receive sufficient notice of a claim bar date and an opportunity to present the claim in the bankruptcy case. Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 96 F.3d 687, 689-90 (3rd Cir. 1996); In re Maya Construction Co., 78 F.3d 1395, 1399 (9th Cir. 1996); Dalton Development Project #1 v. Unsecured Creditors Committee (In re Unioil), 948 F.2d 678, 682-84 (10th Cir. 1991); Spring Valley Farms, Inc. v. Crow, 863 F.2d 832, 834-35 (11th Cir. 1989); Reliable Electric Co., Inc. v. Olson Construction Co., 726 F.2d 620, 623 (10th Cir. 1984).

The Court's Exercise of its Appropriate Discretion.

Regardless of United's section 959(a) arguments, the Court can and should still rule, in the exercise of its discretion, (i) that Nazir and Horowitz are not in contempt and that the imposition of sanctions is inappropriate, (ii) that Nazir's claims were or should be deemed duly asserted and filed against and with the full knowledge of United, and (iii) that the California litigation, which has been ongoing for over a year-and-a-half, ought to proceed to conclusion, with damages on account of prepetition and postpetition claims separately categorized.

15

### III.    CONCLUSION

Nazir and Horowitz request that the Court deny the Motion to Reconsider and grant them such other relief as may be just and appropriate.

IFTIKHAR NAZIR and PHIL HOROWITZ


By:   /s/ Mark F. Hebbeln
Harold L. Kaplan (ARDC No. 312529)
Mark F. Hebbeln (ARDC No. 6272385)
DRINKERBIDDLEGARDNERCARTON
(Drinker Biddle & Reath LLP)
191 North Wacker Drive, Suite 3700
Chicago, Illinois 60606
Telephone: (312) 569-1000

SA0083

# EXHIBIT A

SA0084

# * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH # | E200506 A-0354-00-e |
|---|---|---|
| | EEOC # | 37AA604002 |

If this individual filed with EEOC, this form may be affected by the Privacy Act of 1974.

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING and EEOC

COMPLAINANT'S NAME (Indicate Mr. or Ms.)
NAZIR, Iftikhar A. (Mr.)

ADDRESS
P.C. Box 2242

TELEPHONE NUMBER (INCLUDE AREA CODE)
(650) 225-9591

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| South San Francisco, CA 94083 | | | San Mateo | 083 |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
United Airlines

ADDRESS
Building 49, SFIA

TELEPHONE NUMBER (INCLUDE AREA CODE)
(650) 634-4545

| CITY | STATE | ZIP | COUNTY | COUNTY CODE |
|---|---|---|---|---|
| San Francisco, CA 94128 | | | San Francisco | 075 |

CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE BOXES)
☐ RACE  ☐ SEX  ☐ DISABILITY  ☑ RELIGION  ☑ NATIONAL ORIGIN/ANCESTRY  ☐ DENIAL OF FAMILY/MEDICAL LEAVE  ☐ SEXUAL ORIENTATION
☐ COLOR  ☐ AGE  ☐ MARITAL STATUS  ☐ MEDICAL CONDITION (cancer or genetic characteristics)  ☐ OTHER (SPECIFY)

| NO. OF EMPLOYEES/MEMBERS | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) | RESPONDENT CODE |
|---|---|---|
| 10,000 | May 9, 2005 | 45 |

THE PARTICULARS ARE:

On 5/9/05 I was treated differently and terminated in my position of Supervisor. I was hired on 4/10/89 and earned $70,000 a year.

I.  Bernie Petersen, Manager, told me I was terminated for violating the employer's code of conduct.

II.  I believe that I was treated differently and terminated because of an inadequately investigated charge of sexual harassment, and because of my color (dark), religion (Islam) and national origin (Pakistan). The particulars of my belief are as follows:

A.  On 4/13/05 I complained to Petersen about the services provided by a contractor. On 4/20/05 Petersen and Ron Rich, Labor Relations, informed me that my conduct was the subject of a complaint of sexual harassment under investigation, and I was not allowed to give evidence defending myself prior to my termination.

B.  I was the only supervisor of my religion and national origin, which clearly were offensive to the contractor's onsite manager, who always displayed a negative attitude toward me.

D02282

SA0085

# * * * EMPLOYMENT * * *

| | | |
|---|---|---|
| **COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT** | DFEH # | E200506 A-0354-00-e |
| | EEOC # | 37AA604002 |

COMPLAINANT'S NAME(S) (indicate Mr. or Ms.)
NAZIR, Iftikhar A. (Mr.)

RESPONDENT'S NAME
United Airlines

THE PARTICULARS ARE:

C.  On 5/19/05 I sent a letter to Greg Hall, Senior Vice President, denying the harassment charges and complaining of different treatment based on my religion and national origin. I did not receive a reply to my letter.

Typed and mailed for signature on 08/15/05.

☑ also want this charge filed with the Federal Equal Employment Opportunity Commission (EEOC).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  9/29/05

at  SOUTH SAN FRANCISCO
City

COMPLAINANT'S SIGNATURE

DFEH-300-01 (06/97)        SF:RS:ct
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

DATE FILED:  10/03/05

OCT - 3 2005

STATE OF CALIFORNIA

D02283

SA0086

## SUPPLEMENT TO NOTICE OF FILING OF
## EMPLOYMENT DISCRIMINATION COMPLAINT

Case No.  E200506 A-0354-00-e

In addition to the following specific information, please remember to complete the "Response to a Complaint of Discrimination - B" and respond, in detail, to each allegation in the complaint.  Please supply all statements or documents, which in your opinion, will assist us in determining the merits of this complaint.

1.    State the reason(s) complainant was terminated.

2.    Provide a list naming all persons under the supervision of Bernie Petersen for the past two years.  For each person, identify date hired, position, date and reason if terminated, race/color, national origin, and religion. Submit the employment application for each person listed.

3.    List the names of all persons involved in making the specific decisions to which the complainant objects.  State each person's job title and responsibility as it relates to the issues raised by the complaint.

**D02284**

**SA0087**

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | PERSON FILING CHARGE |
|---|---|
| | THIS PERSON (CHECK ONE) |
| | ___ Claims to be aggrieved |
| IFTIKHAR A. NAZIR | ___ Is filing on behalf of other person(s |
| vs. | DATE OF ALLEGED VIOLATION |
| UNITED AIRLINES | Earliest          Most Recent |
| | PLACE OF ALLEGED VIOLATION |
| | EEOC CHARGE NUMBER<br>37AA604002 |
| | FEPA CHARGE NUMBER (if known)<br>E200506A0354-00-e |

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTIONS WHERE AN FEP AGENCY WILL INITIALLY PROCESS
*(See EEOC "Rules and Regulations" for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[✓] Title VII of the Civil Rights Act of 1964

[ ] The Age Discrimination in Employment Act of 1967 (ADEA)

[ ] The Americans with Disabilities Act of 1990 (ADA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to._____

(FEP Agency)

[X] The_ CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING _ and sent to the EEOC for dual filing purposes.

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

[X] As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provision of Title VII and the ADEA as explained on the reverse side of this form apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ] An Equal Pay Act investigation (29 U.S.C. 209(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X] Enclosure: Copy of the Charge

## BASIS OF DISCRIMINATION:

[ ] RACE   [✓] COLOR   [ ] SEX   [✓] RELIGION   [✓] NATIONAL ORIGIN   [ ] AGE   [ ] OTHER

[ ] DISABILITY   [ ] RETALIATION

CIRCUMSTANCES OF ALLEGED VIOLATION:

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| October 5, 2005 | JOAN EHRLICH, DISTRICT DIRECTOR, SAN FRANCISCO D.O. | |

EEOC FORM 131-A

D02285

**SA0088**

# EXHIBIT B

SA0089

STATE OF CALIFORNIA - State and Consumer Services Agency                                    ARNOLD SCHWARZENEGGER, Governor

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2552
www.dfeh.ca.gov



April 7  2006

Iftikhar Nazir
P.O. Box 2242
South San Francisco,  CA  94083

RE:    E200506A0354-00-e/37AA604002
           NAZIR/UNITED AIRLINES

Dear  Mr. Nazir:

You have requested authorization to file a lawsuit under the Fair Employment and
Housing Act, It is unlikely that the Department of Fair Employment and Housing (DFEH)
will determine whether to issue an accusation within one hundred and fifty (15) days of
the date your complaint was filed.

In view of the above, DFEH Is honoring your request to close the case because you
wish to file a private lawsuit. If this is still your wish, you must sign the enclosed form on
each line indicating "signature." The form must be returned before your case can be
processed for closure. The right-to-sue notice will be part of the official closing letter
issued by the District Administrator. Please be advised that once closed, the case will
not be reopened or processed further.

If you have changed your mind and want the DFEH to pursue the investigation, please
advise me by telephone or letter immediately.

Sincerely,

Richard Swiderski
Consultant
Telephone number: (510) 622-2954

DFEH-200-12 (1/96)

SA0090

STATE OF CALIFORNIA – State and Consumer Services Agency                                    Arnold Schwarzenegger, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2973  TTY (800) 700-2320  Fax (510) 622-2952
www.dfeh.ca.gov



### REQUEST FOR AUTHORIZATION TO FILE A LAWSUIT - EMPLOYMENT

Charging Party
Iftikhar Nazir
Respondent
United Airlines

DFEH #
E200506A0354-00-e
EEOC #
37AA604002

You recently expressed a desire to withdraw your charge of discrimination filed with the Department of Fair Employment and Housing (DFEH) and the U.S. Equal Employment Opportunity Commission (EEOC) and to elect to pursue your remedies in court. This request is subject to approval by the Department after this form is completed.

Your right to file a charge is protected by the DFEH and EEOC. It is unlawful for any person covered by the enabling legislation of the DFEH or EEOC to threaten, intimidate, or harass you because you have filed a complaint.

### Please sign on both lines below:

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so.

1    I wish to pursue this matter in court. Please provide a Right-to-Sue Notice from the Department of Fair Employment and Housing if that has not already been done.

Signed _____    Date 4/12/06 .

2.    I wish to pursue this matter in court. Please provide an authorization to file suit from the U.S. Equal Employment Opportunity Commission.

Signed _____    Date 4/12/06 .

DFEH-600-09B (04/97)

**SA0091**

# EXHIBIT C

SA0092

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY                                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612
510) 622-2973 TTY (800) 700-2320 Fax (510) 622-2952
www.dfeh.ca.gov



April 13, 2006


IFTIKHAR A. NAZIR
P.O. Box 2242
South San Francisco, CA 94083

RE:    E200506A0354-00-e/37AA604002
       NAZIR/UNITED AIRLINES

Dear IFTIKHAR A. NAZIR:

### NOTICE OF CASE CLOSURE

The consultant assigned to handle the above-referenced discrimination complaint that
was filed with the Department of Fair Employment and Housing (DFEH) has
recommended that the case be closed on the basis of: Complainant Elected Court
Action.

Please be advised that this recommendation has been accepted and the case has been
closed effective April 13, 2006.

This letter is also your Right-To-Sue Notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. This is also applicable
to DFEH complaints that are filed under, and allege a violation of Government Code
section 12948 which Incorporates Civil Code sections 51, 51.7, and 54. The civil action
must be filed within one year from the date of this letter. However, if your civil
complaint alleges a violation of Civil Code section 51, 51.7 or 54, you should consult an
attorney about the applicable statutes of limitation. If you signed a settlement
agreement resolving your complaint, it is likely that you have waived your right to file a
private lawsuit.

Notice of Case Closure
Page Two

This case may be referred to the U.S. Equal Employment Opportunity Commission for further review.  If so, pursuant to Government Code section 12965, subdivision (d)(1), your right to sue will be tolled during the pendency of EEOC's review of your complaint.

The Department of Fair Employment and Housing does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,


Herbert Yarbrough
District Administrator


cc:    Case File


Megan  Detzner
Sr  Staff Rep
UNITED AIRLINES-EEO Compliance
1200 E. Algonquin
Elk Grove, IL  90007

DFEH-200-08e (04/03)
ASWIDERRM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| _____ | ) | |

### NOTICE OF CROSS-APPEAL

Iftikhar Nazir and Phil Horowitz, by and through their undersigned counsel, and pursuant to 28 U.S.C. § 158 and Rule 8002 of the Federal Rules of Bankruptcy Procedure, hereby file this notice of cross-appeal to the United States District Court for the Northern District of Illinois from the memorandum opinion docketed as Docket No. 17055 and the order docketed as Docket No. 17056.

The names of the parties to this appeal and the names and addresses of their respective attorneys are as follows:

UAL Corporation, et al., reorganized debtors.

Marc Kieselstein, P.C.
David Seligman
Michael B. Slade
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

Iftikhar Nazir and Phil Horowitz.

Harold Kaplan
Mark Hebbeln
Amy Strong
Foley & Lardner LLP
321 North Clark Street
Suite 2800
Chicago, IL 60610
(312) 832-4500 (telephone)
(312) 832-4700 (facsimile)

CHIC_2949609.1

SA0095

Dated: May 15, 2008                 **IFTIKHAR NAZIR AND PHIL HOROWITZ**

By:  /s/ Mark F. Hebbeln

Harold L. Kaplan (ARDC No. 3125293)
Mark F. Hebbeln (ARDC No. 6272385)
Amy L. Strong (ARDC No. 6287493)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL  60610
(312) 832-4500 (telephone)
(312) 832-4700 (facsimile)

Counsel for Iftikhar Nazir and Phil Horowitz

2

SA0096

## CERTIFICATE OF SERVICE

The undersigned, an attorney hereby certifies that on May 15, 2008, she caused the foregoing **Notice of Cross-Appeal** to be filed electronically through the CM/ECF system and served upon the counsel of record, along with a copy being deposited in the United States mail chute located at 321 North Clark Street, Chicago, Illinois 60610, proper postage prepaid and addressed to the individuals listed on the attached Service List.

/s/ Mark F. Hebbeln

## SERVICE LIST

| | |
|---|---|
| Reorganized Debtors:<br>United Air Lines, Inc.<br>WHQLD<br>1200 East Algonquin Road<br>Elk Grove Village, Illinois 60007<br>Attn:   John Lakosil<br>Phone:          (847) 700-4462<br>Facsimile:     (847) 700-4683 | Counsel to Reorganized Debtors:<br>Kirkland & Ellis<br>200 East Randolph Street<br>Chicago, Illinois 60601<br>Attn:   James H.M. Sprayregen, P.C.<br>          Marc Kieselstein, P.C.<br>          David R. Seligman<br>          Erik W. Chalut<br>Phone:          (312) 861-2000<br>Facsimile:     (312) 861-2200 |
| Office of the United States Trustee:<br>227 West Monroe Street, Suite 3350<br>Chicago, Illinois 60606<br>Attn:   Stephen Wolfe<br>Phone:          (312) 886-5785<br>Facsimile:     (312) 886-5794 | Counsel to the Reorganized Debtors' debtor in possession lender (CIT Group):<br>Schulte, Roth & Zabel<br>919 Third Avenue<br>New York, New York 10022<br>Attn:   Robert J. Mrofka<br>Phone:          (212) 756-2000<br>Facsimile:     (212) 593-5955 |
| Counsel to the Reorganized Debtors' debtor in possession lender and exit lender (Citibank and JP Morgan):<br>Morgan, Lewis & Bockius, LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn:   Richard S. Toder<br>          Jay Teitelbaum<br>Phone:          (212) 309-6000<br>Facsimile:     (212) 309-6001 | Counsel to the Reorganized Debtors' debtor in possession lender and exit lender (Citibank and JP Morgan):<br>Kaye Scholer, LLP<br>3 First National Plaza, Suite 4100<br>70 West Madison Street<br>Chicago, Illinois 60602<br>Attn:   Michael B. Solow<br>Phone:          (312) 583-2300<br>Facsimile:     (312) 583-2360 |
| Counsel to the Reorganized Debtors' debtor in possession lender and exit lender (General Electric Capital Corporation):<br>Weil, Gotschal & Manges, LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn:   Richard P. Krasnow<br>          Scott E. Cohen<br>Phone:          (212) 310-8000<br>Facsimile:     (212) 310-8007 | Official Notice and Claims Agent:<br>Poorman-Douglas Corporation<br>10300 SW Allen Boulevard<br>Beaverton, Oregon 97005<br>Attn:   Tina Wheelon<br>Phone:          (503) 277-7999<br>Facsimile:     (503) 350-5230 |

CHIC_2953990.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UAL CORPORATION, et al., | ) | Case No. 02-B-48191 |
| | ) | (Jointly Administered) |
| Reorganized Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| _____ | ) | |

## CROSS-APPELLANTS AND APPELLEES' RECORD DESIGNATIONS AND STATEMENT OF ISSUES ON APPEAL

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, Iftikhar Nazir ("Nazir") and Phil Horowitz ("Horowitz"), Cross-Appellants and Appellees, by and through their undersigned counsel, hereby file this statement of issues and designation of contents of the record with respect to their cross-appeal filed on May 15, 2008 [Docket No. 17079] from the Memorandum Opinion dated April 24, 2008 [Docket No. 17055] and the Order dated April 24, 2008 [Docket No. 17056]. The designation herein includes both the Reorganized Debtors' record designations and additional items to be included in both the record on the Reorganized Debtors' appeal and Nazir and Horowitz's cross-appeal.

**SA0099**

## STATEMENT OF ISSUE ON CROSS-APPEAL

1.     Whether the Bankruptcy Court, having held that the Reorganized Debtors'
chapter 11 plan contains a provision that violates 28 U.S.C. §959(a) and therefore employs a
"means forbidden by law" under 11 U.S.C. §1129(a)(3), erred in holding that such provision is
nonetheless binding on creditors.

## REORGANIZED DEBTORS' RECORD DESIGNATIONS

| Date Entered | Docket No. | Document |
|---|---|---|
| 11/18/03 | 4620 | United's Fifth Omnibus Objection to Claims |
| 11/18/03 | 4621 | Notice of Filing |
| 12/17/03 | 4937 | United's Reply in Support of its Fifth Omnibus Objection to Claims |
| 12/19/03 | 4961 | Order |
| 9/7/05 | 12640 | Disclosure Statement |
| 9/14/05 | 12720 | Affidavit of Service |
| 11/15/05 | 13534 | Declaration of Publication |
| 1/20/06 | 14829 | Order Confirming Plan of Reorganization |
| 11/9/07 | 16893 | United Motion for Contempt |
| 12/12/07 | 16934 | Objection to United Motion |
| 12/17/07 | 16939 | United's reply in Support of Motion |
| 12/19/07 | ------- | Hearing Transcript |
| 12/26/07 | 16960 | Order |
| 1/4/08 | 16965 | United's Motion for Reconsideration |
| 1/16/08 | 16971 | Objection to United's Motion |
| 1/21/08 | 16980 | United's Reply in Support of Motion |

2

SA0100

| | | |
|---|---|---|
| 1/23/08 | ------- | Hearing Transcript |
| 4/24/08 | 17055 | Memorandum Opinion |
| 4/24/08 | 17056 | Order |
| 5/5/08 | 17062 | Notice of Appeal |

## ADDITIONAL RECORD DESIGNATIONS BY NAZIR AND HOROWITZ

| Date Entered | Docket No. | Document |
|---|---|---|
| 11/14/05 | 13512 | Declaration of Poorman-Douglas Corporation Regarding Service of Solicitation Documents |
| 2/2/06 | 15079 | Affidavit of Service by Poorman-Douglas Corporation Regarding Debtors' Notice of Entry of Confirmation Order and other Key Relevant Dates |
| 5/15/08 | 17079 | Notice of Cross-Appeal |

Nazir and Horowitz reserve the right to further supplement the record if necessary.

Dated: May 27, 2008

**IFTIKHAR NAZIR AND PHIL HOROWITZ**

By:  /s/ Mark F. Hebbeln

Harold L. Kaplan (ARDC No. 3125293)
Mark F. Hebbeln (ARDC No. 6272385)
Amy L. Strong (ARDC No. 6287493)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 2800
Chicago, IL  60610
(312) 832-4500 (telephone)
(312) 832-4700 (facsimile)

Counsel for Iftikhar Nazir and Phil Horowitz

CHIC_2982729.2

**SA0101**

## CERTIFICATE OF SERVICE

The undersigned, an attorney hereby certifies that on May 27, 2008, she caused the foregoing **Cross-Appellants and Appellees' Record Designations and Statement of Issues on Appeal** to be filed electronically through the CM/ECF system and served upon the counsel of record, along with a copy being deposited in the United States mail chute located at 321 North Clark Street, Chicago, Illinois 60610, proper postage prepaid and addressed to the individuals listed on the attached Service List.

/s/ Mark F. Hebbeln

CHIC_2982729.2

**SA0102**

## SERVICE LIST

| | |
|---|---|
| Reorganized Debtors:<br>United Air Lines, Inc.<br>WHQLD<br>1200 East Algonquin Road<br>Elk Grove Village, Illinois 60007<br>Attn:   John Lakosil<br>Phone:        (847) 700-4462<br>Facsimile:    (847) 700-4683 | Counsel to Reorganized Debtors:<br>Kirkland & Ellis<br>200 East Randolph Street<br>Chicago, Illinois 60601<br>Attn:   James H.M. Sprayregen, P.C.<br>          Marc Kieselstein, P.C.<br>          David R. Seligman<br>          Erik W. Chalut<br>Phone:        (312) 861-2000<br>Facsimile:    (312) 861-2200 |
| Office of the United States Trustee:<br>227 West Monroe Street, Suite 3350<br>Chicago, Illinois 60606<br>Attn:   Stephen Wolfe<br>Phone:        (312) 886-5785<br>Facsimile:    (312) 886-5794 | Counsel to the Reorganized Debtors' debtor in possession lender (CIT Group):<br>Schulte, Roth & Zabel<br>919 Third Avenue<br>New York, New York 10022<br>Attn:   Robert J. Mrofka<br>Phone:        (212) 756-2000<br>Facsimile:    (212) 593-5955 |
| Counsel to the Reorganized Debtors' debtor in possession lender and exit lender (Citibank and JP Morgan):<br>Morgan, Lewis & Bockius, LLP<br>101 Park Avenue<br>New York, New York 10178<br>Attn:   Richard S. Toder<br>          Jay Teitelbaum<br>Phone:        (212) 309-6000<br>Facsimile:    (212) 309-6001 | Counsel to the Reorganized Debtors' debtor in possession lender and exit lender (Citibank and JP Morgan):<br>Kaye Scholer, LLP<br>3 First National Plaza, Suite 4100<br>70 West Madison Street<br>Chicago, Illinois 60602<br>Attn:   Michael B. Solow<br>Phone:        (312) 583-2300<br>Facsimile:    (312) 583-2360 |
| Counsel to the Reorganized Debtors' debtor in possession lender and exit lender (General Electric Capital Corporation):<br>Weil, Gotschal & Manges, LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn:   Richard P. Krasnow<br>          Scott E. Cohen<br>Phone:        (212) 310-8000<br>Facsimile:    (212) 310-8007 | Official Notice and Claims Agent:<br>Poorman-Douglas Corporation<br>10300 SW Allen Boulevard<br>Beaverton, Oregon 97005<br>Attn:   Tina Wheelon<br>Phone:        (503) 277-7999<br>Facsimile:    (503) 350-5230 |

CHIC_2982729.2

**SA0103**