IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                  )
                                        )    Case No. 08-CV-3397
UAL CORPORATION, et al.,                )    Judge John W. Darrah
                                        )
Reorganized Debtors.                    )
                                        )    Appeal from Case No. 02-B-48191
                                        )    Judge Eugene R. Wedoff
                                        )

**UNITED'S REPLY BRIEF IN SUPPORT OF ITS APPEAL AND RESPONSE TO THE
"CROSS-APPEAL" OF IFTIKHAR NAZIR AND PHIL HOROWITZ**

_____ / s / _____ Michael B. Slade
Marc Kieselstein, P.C. (ARDC No. 6199255)
David R. Seligman (ARDC No. 6238064)
Michael B. Slade (ARDC No. 6274231)
Erik W. Chalut (ARDC No. 6269251)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

Counsel for the Appellant-Cross-Appellee

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................4

A.    The Bankruptcy Court Misread Both 11 U.S.C. § 1141 and 28 U.S.C. § 959. ..................4

B.    Nazir Received Sufficient Notice To Be Bound To United's Plan. ...................................10

C.    Nazir's "Ambiguity" Defense Lacks Merit And Should Be Rejected.............................14

D.    United's Plan is Binding On All Creditors, And Cannot Be Collaterally Attacked
      Post-Confirmation.......................................................................................16

CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**Page**

**Cases**

Adair v. Sherman,
    230 F.3d 890 (7th Cir., 2000) ........................................................ 17

Carter v. Rogers,
    220 F.3d 1249 (11th Cir. 2000) ...................................................... 7

Carter v. Safety-Kleen Corp.,
    2007 WL 1180581 (S.D.N.Y. 2007) .............................................. 1

City of New York v. New York, N.H. & H.R. Co.,
    344 U.S. 293 (1953) ...................................................................... 10

Cross v. K.B. Toys,
    2006 WL 2437831 (N.D. Ill. 2006) ............................................... 1

D.C. Transit Systems, Inc. v. United States,
    531 F. Supp. 808  (D. D.C. 1982) .................................................. 12

Dersch Energies, Inc. v. Shell Oil Co.,
    314 F.3d 846 (7th Cir. 2002) ......................................................... 5

Esoimeme v. United Airlines, Inc.,
    369 B.R. 531 (N.D. Cal. 2007) ...................................................... 8

FCC v. NextWave Personal Comm's, Inc.,
    537 U.S. 293 (2003) ...................................................................... 5

Fielder v. UAL Corp.,
    203 Fed. Appx. 15 (9th Cir. 2006) ................................................ 8

Fogel v. Zell,
    221 F.3d 955 (7th Cir. 2000) ......................................................... 12

Holstein v. Brill,
    987 F.2d 1268 (7th Cir. 1993) ....................................................... 7

In re American Assoc. Sys., Inc.,
    373 F. Supp. 977 (E.D. Ky. 1974) ................................................ 7

In re Andersen,
    179 F.3d 1253 (10th Cir. 1999) ..................................................... 17

*In re Balboa Improvements Ltd.*,
    99 B.R. 966 (9th Cir. BAP 1989) ............................................................... 7

*In re Big O Movers & Storage, Inc.*,
    326 B.R. 434  (Bankr. N.D. Ill. 2005) ..................................................... 13

*In re Booth*,
    289 B.R. 665 (Bankr. N.D. Ill. 2003) ................................................. 18, 19

*In re Chappell*,
    984 F.2d 775 (7th Cir. 1993) ................................................................. 17

*In re Chicago Pacific Corp.*,
    773 F.2d 909 (7th Cir. 1985) ............................................................ 6, 19

*In re Cummings*,
    297 B.R. 701 (Bankr. N.D. Ill. 2003) ...................................................... 18

*In re Duggins*,
    263 B.R. 233 (Bankr. C.D. Ill. 2001) ...................................................... 18

*In re Flor*,
    166 B.R. 512 (Bankr. D. Conn. 1994) .................................................... 16

*In re Gregory*,
    705 F.2d 1118 (9th Cir. 1983) ............................................................... 17

*In re Harvey*,
    213 F.3d 318 (7th Cir. 2000) ................................................................. 17

*In re Image Worldwide, Ltd.*,
    139 F.3d 574 (7th Cir. 1998) ................................................................. 20

*In re Justice Oaks II, Ltd.*,
    898 F.2d 1544 (11th Cir. 1990) ............................................................. 17

*In re KMart Corp.*,
    359 F.3d 866 (7th Cir. 2004) ................................................................... 9

*In re Koelbl*,
    757 F.2d 137 (2d Cir. 1984) ................................................................. 17

*In re Landau Boat Co.*,
    13 B.R. 899 (Bankr. W.D. Mo. 1981) .................................................... 17

*In re Longardner & Associates, Inc.*,
    855 F.2d 455 (7th Cir. 1988) ........................................................... 10, 11

*In re Markos Gurnee P'ship,*
    182 B.R. 211 (Bankr. N.D. Ill. 1995) ........................................................... 6

*In re Penn Central Trans. Co.,*
    771 F.2d 762 (3d Cir. 1985).......................................................................... 12

*In re Pettibone Corp.,*
    162 B.R. 791 (Bankr. N.D. Ill. 1994) ......................................................... 13

*In re Pincombe,*
    256 B.R. 774 (Bankr. N.D. Ill. 2000) ......................................................... 14

*In re Piper Aircraft Co.,*
    244 F.3d 1289 (11th Cir. 2001) .................................................................. 17

*In re Richard Potasky Jeweler, Inc.,*
    222 B.R. 816 (Bankr. S.D. Ohio 1998)......................................................... 6

*In re Sam,*
    894 F.2d 778 (5th Cir. 1990) ...................................................................... 19

*In re Smith,*
    2007 WL 1544366 (Bankr. E.D. Wis. May 29, 2007)................................. 19

*In re SNA Nut Co.,*
    198 B.R. 541 (Bankr. N.D. Ill. 1996) ......................................................... 13

*In re Szostek,*
    886 F.2d 1405 (3d Cir.1989)....................................................................... 17

*In re U.S. Airways, Inc.,*
    365 B.R. 624 (Bankr. E.D. Va. 2007)........................................................... 1

*In re UAL Corp.,*
    386 B.R. 701 (Bankr. N.D. Ill. 2008) ......................................................... 16

*In re UAL Corp.,*
    411 F.3d 818 (7th Cir. 2005) ...................................................................... 16

*In re Varat Enters, Inc.,*
    81 F.3d 1310 (4th Cir. 1996) ...................................................................... 17

*In re Watkins,*
    240 B.R. 735 (Bankr. C.D. Ill. 1999).......................................................... 18

*James v. Sheahan,*
    137 F.3d 1003 (7th Cir. 1998) .................................................................... 17

*Kresmary v. Service America Corp.*,
  227 B.R. 10 (D. Conn. 1998) ................................................................. 1

*Litton Loan Serv., L.P. v. Ephraim*,
  2008 WL 3949914 (N.D. Ill. Aug. 14, 2008) .................................... 18

*Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*,
  891 F.2d 159 (7th Cir. 1989) ............................................................ 18

*Matter of Gregory*,
  705 F.2d 1118 (9th Cir. 1983) .......................................................... 12

*Matter of Hunter*,
  970 F.2d 299 (7th Cir. 1992) ............................................................ 20

*Matter of Paeplow*,
  972 F.2d 730 (7th Cir. 1992) ............................................................ 14

*Matter of Pence*,
  905 F.2d 1107 (7th Cir. 1990) .......................................................... 19

*Matter of Weber*,
  25 F.3d 413 (7th Cir. 1994) .............................................................. 20

*McSherry v. Trans World Airlines, Inc.*,
  81 F.3d 739 (8th Cir. 1996) ................................................................ 1

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .............................................................. 10, 13, 14

*Nelson v. LaCrosse County Dist. Atty*,
  301 F.3d 820 (7th Cir. 2002) ............................................................ 17

*O'Loughlin v. County of Orange*,
  229 F.3d 871 (9th Cir. 2000) .............................................................. 1

*Reliable Elec. Co., Inc. v. Olson Const. Co.*,
  726 F.2d 620 (10th Cir. 1984) .......................................................... 13

*TRW, Inc. v. Andrews*,
  534 U.S. 19 (2001) .............................................................................. 5

*Williams v. Kmart Corporation*,
  No. 03-A-239N, U.S.D.C., M.D. Ala.
  (June 14, 2004) ............................................................................. 1, 5

*Wright v. Centennial Health Care Corp.*,
  383 B.R. 355 (D. D.C. 2008) .............................................................. 1

**Statutes**

11 U.S.C. § 1141 ........................................................................................... passim

28 U.S.C. § 959 ............................................................................................. passim

**Other Authorities**

*Collier on Bankruptcy* (15th ed) § 10.02 ....................................................... 6

## INTRODUCTION

Iftihkar Nazir and his counsel ("Nazir") have filed a thirty-page brief that essentially sidesteps the central issue in this appeal. The question here is a legal one: whether an employee who believes he was discriminated against *during* a debtor's bankruptcy case can file a lawsuit alleging as much six months *after* the debtor's Plan of Reorganization has been confirmed and, pursuant to 11 U.S.C. 1141, all pre-confirmation liability is discharged. On this score, the Bankruptcy Court's decision is clearly an outlier, given that every single case on the topic, including several circuit-level decisions, has come to the opposite conclusion.[1] Conveniently, of course, Nazir does not even cite, let alone make any serious attempt to distinguish, any of these authorities—despite the fact that: (1) United cited them on page 1 of its opening brief and discussed them in detail throughout; and (2) each case, including the one initially cited by the Bankruptcy Court, is precisely on point and requires reversal and remand.

---

[1] *McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740-41 (8th Cir. 1996) (former employee of a bankrupt company cannot bring a suit *after* confirmation for discrimination that purportedly occurred *before* confirmation); *O'Loughlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000) (same); *Cross v. K.B. Toys*, 2006 WL 2437831, at *2 (N.D. Ill. 2006) (same); *In re U.S. Airways, Inc.*, 365 B.R. 624, 620 (Bankr. E.D. Va. 2007) (because "the pertinent events related to Ms. Holcombe's discrimination claim against U.S. Airways all occurred pre-confirmation," her claim "does not survive the discharge that was granted in that case"); *Kresmary v. Service America Corp.*, 227 B.R. 10, 14 (D. Conn. 1998) (same); *Carter v. Safety-Kleen Corp.*, 2007 WL 1180581, at *4 (S.D.N.Y. 2007) (same); *Williams v. Kmart Corporation*, No. 03-A-239N, U.S.D.C., M.D. Ala. (June 14, 2004) (A542-45) ("Under the plain language of 11 U.S.C. § 1141(d), the Plaintiff's claim was discharged upon confirmation of the reorganization plan, and there is no exception in § 1141 which would cover this pending employment discrimination lawsuit."); *Wright v. Centennial Health Care Corp.*, 383 B.R. 355, 357 (D. D.C. 2008) (post-petition, pre-confirmation employment discrimination case barred by discharge) ("As a general rule, post-petition/pre-confirmation claims are discharged as part of bankruptcy reorganization.").

1

Nazir's tactic—ignoring the mountain of on-point caselaw demonstrating his error—mirrors the opinion of the Bankruptcy Court. Initially, in denying United's motion, the Bankruptcy Court relied exclusively on a case in which an Alabama federal district court had held that through Section 959(a), an employee could sue for pre-confirmation employment discrimination *after* a debtor (there, K-Mart) had received a Section 1141 discharge. (A517-19). Then, of course, United pointed out that the Alabama district court had reversed itself and held, unambiguously, that the discharge guaranteed by the Bankruptcy Code trumped any rights to file suits for conduct occurring during the bankruptcy case. (A542-45) Unfortunately, despite United pointing the Alabama court's reversal out for the Bankruptcy Court—making the body of law on the topic uniform—the Court ignored it and went the other way.

Ignoring the uniform body of law relevant here does not make that law disappear. As described in United's briefs, this Court should reverse the Bankruptcy Court for three reasons.

*First*, both the Bankruptcy Court and Nazir fundamentally misinterpret 11 U.S.C. § 1141 and 28 U.S.C. § 959(a). The only way to read the two sections together is that any claims preserved by Section 959(a) pre-confirmation are erased by confirmation. There are no cases going the other way, and Nazir does not cite any. *See supra* pp. 4-9.

*Second*, Nazir's claim that he did not receive formal notice of every pleading filed in the Bankruptcy Court is irrelevant. The law does not require perfect notice; merely notice constitutionally sufficient under the circumstances. Nazir received it—he received notice of the proof of claim deadline and actually filed a claim in United's bankruptcy (which was paid), and was specifically informed that United's Plan and Disclosure Statement had been filed, that a hearing on the Disclosure Statement had been scheduled, and that Nazir could get copies of the Plan and Disclosure Statement upon request. The question is not (as Nazir posits) what notice he

did not receive, but what notice he *did* receive. Any responsible creditor given the significant notice Nazir got here would have taken steps to protect their interest. Nazir did nothing, and cannot blame United for his delinquency. *See supra* pp. 10-14.

*Third*, Nazir's "ambiguity" defense lacks merit. Nazir claims that because the Bankruptcy Court came up with Section 959(a) *sua sponte* and permitted him to escape from discharge, he must not have been in contempt. Not so. Nazir was clearly barred by the Bankruptcy Code and by Court Order from filing his lawsuit. While the ultimate sanction is left to the Bankruptcy Court's discretion, that sanction must be determined *after* this Court remands to the Bankruptcy Court to consider with the correct legal framework *See supra* pp. 14-15.

*Finally*, Nazir's argument in his so-called "cross-appeal"—that no creditor is bound to United's Plan because it purportedly violated Section 959(a)—is baseless. Every court to address the topic, including the Seventh Circuit on multiple occasions, has rejected Nazir's argument and held that once a Plan of Reorganization is confirmed, it binds all creditors, regardless of whether or not the Plan should have been confirmed in the first place. Nazir's argument to the contrary defies the applicable law and contravenes the very purpose of the Bankruptcy Code: giving reorganized debtors a fresh start. *See supra* pp. 16-20.

The rhetoric and hyperbole throughout Nazir's brief—claiming that United sought "hundreds of thousands of dollars" in sanctions (Nazir Br. at 1), and should be "admonished" for engaging in "underhanded tactics" (*id.* at 7)—is inappropriate. Nazir cannot plausibly claim the high ground here. He filed a lawsuit, accusing United of race discrimination, that was barred as

a matter of law and baseless as a matter of fact.[2]  United has nothing against Nazir, but must defend itself against his unfounded claims.  In this appeal, United is only asking the Court to enforce what Chapter 11 plainly provides: discharge of pre-confirmation claims so that United can truly have the fresh start contemplated by the Bankruptcy Code.

## ARGUMENT

**A.      The Bankruptcy Court Misread Both 11 U.S.C. § 1141 and 28 U.S.C. § 959.**

The underlying question in this case is whether Nazir's lawsuit is "saved" by 28 U.S.C. § 959(a) from the Section 1141 discharge granted to United by virtue of its confirmation.  The Bankruptcy Court held that *all* cases falling within the scope of Section 959(a) are not affected by the Section 1141 discharge at all, regardless of when they are filed or what impact they have on the interests of reorganized debtors.  That holding, respectfully, is wrong.  Despite Nazir's efforts to ignore it, the interplay between Sections 1141 and 959 is not a conflict "manufactured" by United.  It is palpable and obvious—and must be understood to resolve this case correctly.

In a nutshell, both the Bankruptcy Court and Nazir saw 28 U.S.C. § 959(a) as a silent exception to the broad discharge provided by 11 U.S.C. § 1141(d)(1).  That cannot possibly be so, for numerous reasons that Nazir does not even attempt to rebut.

_____

[2]  The California State trial court hearing Nazir's case recently granted summary judgment to United because Nazir's claims were baseless.  *See* Ex. A, at 5 (holding that Nazir was fired for "his gender harassment and unwanted physical contact with the woman supervising the custodian services," and noting Nazir's failure to present any evidence to dispute this fact).  In the process, the Court criticized Nazir and his counsel for attempting to overwhelm the record with irrelevant issues that had nothing to do with his client's meritless claim, creating additional work for the Court.  *Id.* at 8.

*First*, and perhaps most obviously, when Congress wanted to create exceptions to the Section 1141 discharge, it said so explicitly. As the Supreme Court has noted, the only exceptions to discharge that exist are those are specifically listed within Section 1141:

> A preconfirmation debt is dischargeable unless it falls within an express exception to discharge. Subsection 1141(d) of the Bankruptcy Code states that, except as otherwise provided therein, the "confirmation of a plan [of reorganization] ... discharges the debtor from any debt that arose before the date of such confirmation," 11 U.S.C. § 1141(d)(1)(A) (emphasis added), and *the only debts it excepts from that prescription are those described in § 523*, see § 1141(d)(2).

*FCC v. NextWave Personal Comm's, Inc.*, 537 U.S. 293, 303 (2003) (emphasis added). Nazir's lawsuit for alleged pre and post-petition employment discrimination does not fall within any of the listed exceptions to the Section 1141 discharge, and Nazir has never asserted that it does. That fact is dispositive. It defies every principle of proper statutory interpretation to read into Section 1141 an exception to discharge that is in *addition* to the exceptions listed. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (citing cases); *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 861 n.15 (7th Cir. 2002) ("to express or include the one thing implies the exclusion of the other"); *Williams*, No. 03-A-239N, A544 ("there is no exception in § 1141 which would cover this pending employment discrimination lawsuit").

*Second*, the language of Section 959(a) itself suggests that it applies only to suits that are *not* discharged by Section 1141(d) or otherwise treated by the plan. The lawsuits preserved by Section 959(a) are, by their terms, still "subject to the general equity power of such court so far as the same may be necessary to the ends of justice." 28 U.S.C. § 959(a). Through this language, Congress gave bankruptcy courts the authority to enjoin lawsuits based on post-petition activity where doing so would impede the reorganization effort. *See, e.g., Collier on*

*Bankruptcy* (15th ed) § 10.02 (describing how courts have exercised their injunction powers under Section 959(a) where "the continuation of state court lawsuits against a trustee or debtor in possession would be disruptive to the reorganization effort"); *In re Chicago Pacific Corp.*, 773 F.2d 909, 918 (7th Cir. 1985) (equity power permits an injunction against claim falling within Section 959(a) "in the exercise of sound discretion and upon a finding that the action would embarrass, burden, delay or otherwise impede the reorganization proceedings"). This language quite obviously applies to claims that are brought *during* the course of a bankruptcy proceeding, before plan confirmation clarifies the scope of a debtor's post-bankruptcy obligations and eliminates those that have not been provided for in a confirmed plan. There is little need for the "equity" clause concluding Section 959(a) post-confirmation, demonstrating that Section 959(a) was never intended to apply, and does not apply, post-confirmation.

Nazir is, of course, correct that Section 959(a) was enacted by Congress to provide a narrow exception to the old *Barton* rule. But the reason the section was enacted, and its intended purpose, proves United's point. ***Barton* had nothing whatsoever to do with discharge**, and Section 959(a) does not by its language or its intent provide an exception, "narrow" or otherwise, to Section 1141. That is precisely why the Bankruptcy Court's interpretation of Section 959(a), and its determination that Section 959(a) operates independent of discharge, cannot be correct.[3]

---

[3] Nazir's discussion of what types of post-petition misconduct fall under Section 959(a) (Nazir Br. at 21-23) is interesting, but irrelevant. There are a number of cases distinguishing between conduct "carrying on business connected with [the debtor's] property" and thus falling within Section 959(a), and conduct *incident to the restructuring*, which falls outside Section 959(a). *See In re Markos Gurnee P'ship*, 182 B.R. 211 (Bankr. N.D. Ill. 1995) (discussing whether breach of fiduciary duty claim against trustee for failure to pay taxes for operating estate fell within Section 959); *In re Richard Potasky Jeweler, Inc.*, 222 B.R. 816, 822 (Bankr. S.D. Ohio 1998) (lawsuit against debtor's attorneys not covered by Section 959(a) because it did not involve "carrying on business"); *Carter v.* (Continued...)

As the Seventh Circuit has held, Section 1141(d)(1) must mean what it says—there are no "silent" exceptions. *See Holstein v. Brill*, 987 F.2d 1268, 1269 (7th Cir. 1993) ("Confirmation automatically discharges all debts other than those provided for in the plan, 11 U.S.C. § 1141(d)(1)(A), and each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself.").

Nazir's argument that Section 959(a) permits debtors to be sued outside of the bankruptcy court, at all times and with no restrictions, goes well beyond both its language and its intent—it overreads the statute. The fact that a debtor may be *sued* outside the bankruptcy court for certain misconduct occurring during a bankruptcy case certainly does not change the fact that the *discharge* otherwise provided by federal law might ***relieve the debtor of liability*** post-confirmation. Indeed, if Nazir were correct that Section 959(a) permits a lawsuit to proceed against a debtor in another court—regardless of the application of other provisions of federal law—*nothing* could bar a lawsuit against a debtor outside of the bankruptcy court for post-petition misconduct in the operation of its business. Nazir's interpretation would prohibit a debtor from relying on, for example, statutes of limitations, statutes of repose, federal statutes requiring exhaustion of administrative remedies, and federal statutes which would otherwise preempt the pursuit of claims against a debtor. Section 959(a) does not go nearly that far. It is

---

*Rogers*, 220 F.3d 1249 (11th Cir. 2000) (lawsuit for breach of fiduciary duty in a debtors' liquidation of his estate was not "carrying on business" and thus outside Section 959(a)); *In re Balboa Improvements Ltd.*, 99 B.R. 966, 969 (9th Cir. BAP 1989) (Section 959(a) was "not intended to apply to a breach of a fiduciary duty in the administration of a bankruptcy estate"); *In re American Assoc. Sys., Inc.*, 373 F. Supp. 977 (E.D. Ky. 1974) (holding trustee in contempt for suing a debtor during a bankruptcy for acts in administering the estate that fell outside of Section 959(a)). These cases have absolutely nothing to do with whether post-petition misconduct is discharged unless otherwise treated in the plan.

an exception to the *Barton* principle that lawsuits against a debtor for conduct during a bankruptcy case must be brought in the bankruptcy court. But Section 959(a) does *not* overturn federal law that would impair or—as applied here— discharge a debtor's liability.

The bottom line is that Sections 1141 and 959 must be read together, and only United's interpretation of both sections makes sense. That is precisely why every court to address the issue has held that confirmation bars post-petition discrimination claims *even if* they could not have been asserted in court before confirmation because state or federal administrative remedies needed to be exhausted first.[4] While Nazir would prefer to ignore the case entirely, the *Williams* court that addressed the intersection between Sections 959 and 1141 did not think the conflict at the center of this case was—as Nazir might say—"manufactured." Quite the contrary, it held that once a Plan of Reorganization is confirmed, any preexisting rights to prosecute lawsuits under Section 959(a) are extinguished:

> [T]he court reconsiders its previous determination, and concludes that allowing this lawsuit to proceed because it was properly filed in this court under § 959(a) would constitute an extension of the statute with no evidence of Congressional intent in the statutory language to support such an extension. Under the plain language of 11 U.S.C. § 1141(d), the Plaintiff's claim was discharged upon confirmation of the reorganization plan, and there is no exception in § 1141 which would cover this pending employment discrimination lawsuit. (*Williams*, No. 03-A-239N, U.S.D.C., M.D. Ala., A542-45).

In sum, Section 1141(d) discharges a debtor from all claims based on conduct occurring prior to confirmation, except as otherwise provided in the plan. After Plan confirmation, the terms of the ***Plan***—and not Section 959(a)—must govern. Here, the terms of United's Plan

---

[4] *See* Cases cited *infra* n. 1; *Esoimeme v. United Airlines, Inc.*, 369 B.R. 531 (N.D. Cal. 2007) (granting summary judgment in employment discrimination case based on United's discharge); *Fielder v. UAL Corp.*, 203 Fed. Appx. 15 (9th Cir. 2006) (same).

clearly forbade Nazir from prosecuting an employment discrimination case based on conduct prior to United's confirmation, in a California state court, a year after confirmation. That is precisely why Nazir was acting in contempt of Court.

Other than invective and sarcasm, Nazir does little to dispute this point. He argues that he "meets United's proposed test" for surviving discharge (Nazir Br. at 25) because he filed a state administrative complaint alleging discrimination prior to confirmation, which was required before he could actually file a lawsuit. Nonsense. That Nazir had to exhaust administrative remedies before filing suit, and was legally prohibited from filing until he did so, is irrelevant. Numerous cases have held employment discrimination claims discharged even where they could not have been previously filed due to the absence of a right to sue letter. *See infra* n. 1. That result is far from "absurd" (Nazir Br. at 24)—exactly the opposite, as that result has been confirmed by every court to consider the issue as a necessary consequence of giving reorganized debtors the fresh start that underlies Chapter 11 of the Bankruptcy Code. *See infra* n. 1. There are no cases going the other way.

At the end of the day, the Bankruptcy Court held that Section 959(a) prohibits a debtor from receiving a discharge for post-petition conduct in the operation of the debtor's business. This reading of Section 959(a) constructively amends Section 1141 to read that a discharge applies to "any debt that arose before the petition date" rather than, as the statute says, "***any debt that arose before the date of such confirmation***." 11 U.S.C. § 1141. But Section 1141—central to giving debtors a fresh start—must be enforced as written. *See In re KMart Corp.*, 359 F.3d 866, 869 (7th Cir. 2004) (when interpreting statutes, "[j]udges do not invent missing language"). This Court should reverse and remand for the Bankruptcy Court to consider Nazir's conduct under the proper legal lens.

9

**B.    Nazir Received Sufficient Notice To Be Bound To United's Plan.**

Nazir's "lack of notice" arguments all miss the point.  He concedes that, under the applicable law, notice need not be perfect, only constitutionally sufficient.  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (requirement is "notice reasonably calculated, under all circumstances, to appraise [one] of the pendancy of the action and afford [one] an opportunity to present objections").  Nazir does not dispute that he filed a proof of claim in the Bankruptcy Case (which was paid), and receive a notice informing him that: (1) United had filed its Plan and Disclosure Statement; (2) a hearing had been scheduled at which the Court would consider any objections to the Disclosure Statement and set a date on confirming United's Plan; and (3) Nazir could get copies of all of the relevant documents by asking United's claims agent for a copy or by viewing them on an internet website.  These are all indisputable facts.

Nazir's focus—on the documents he claims that he did not receive—is entirely wrong.  The question under *Mullane* is not what notice would have been absolutely perfect, but whether the notice Nazir received was sufficient to inform him of the proceedings and give him the opportunity to voice his objections.  Because it did, under Seventh Circuit law, the notice Nazir received was constitutionally sufficient.[5]

In *In re Longardner & Associates, Inc.*, 855 F.2d 455 (7th Cir. 1988), the Seventh Circuit addressed a creditor's argument that it had been given insufficient notice of Plan confirmation

---

[5]  Nazir cites *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293 (1953), but himself notes that the Supreme Court considered the statutory notice requirements of Chapter 7 in that case, not the constitutional requirements applicable to Chapter 11 cases and the situation here.  (Nazir Br. at 17 n.9).  The relevant notice test here, as Nazir tacitly concedes, is the one set forth by the Supreme Court in *Mullane* and by the Seventh Circuit in *Longardner, Fogel,* and other cases.

sufficient to bar his claim.  While finding his plight sympathetic, the Seventh Circuit disagreed and held the creditor bound to the plan.  The reason was simple:  because the creditor was given notice that a Plan was pending, and the date at which confirmation of that Plan would be considered, the creditor had the opportunity to be heard.  *See id.* at 465.  Therefore, the fact that the creditor allegedly did not know the plan was actually confirmed, or receive a copy of the confirmation order, was irrelevant, and its claim could not be reinstated.  *See id.* ("This notice of the pendency of a hearing to consider confirmation of the plan is sufficient to satisfy due process requirements because the creditor had the opportunity to be heard.").

That is essentially what occurred here.  Because he had already filed a proof of claim ***that had been paid***, and therefore he was not eligible to vote on the Plan, Nazir was not sent the complete solicitation package, nor was he sent a copy of the signed confirmation order.  But under Seventh Circuit law, that is not a dispositive or even particularly relevant fact.  At the same time as United filed the Plan and Disclosure Statement in September 2005, it provided all claimants— including Nazir—with a Notice indicating that its Disclosure Statement and Plan of Reorganization had been filed, and describing where those documents could be found:  either online at www.pd-ual.com, or by contacting United's solicitation agent for a hard copy.  Nazir does not dispute receiving this notice, nor does he dispute throwing it in the trash rather than reading it.  Had he read the materials to which he was directed, Nazir would have had everything he needed to present any objections to United's Plan.  He did not do so, but that is not United's fault.  As the Ninth Circuit held in finding notice sufficient in similar circumstances:

> When the holder of a large, unsecured claim such as [creditor] receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has

11

sufficient information to lead him to a fact, he shall be deemed to be conversant of it." *D.C. Transit Systems, Inc. v. United States*, 531 F. Supp. 808, 812 (D. D.C. 1982) (citations omitted).   The [abbreviated notice sent to creditor, akin to the notice sent to Nazir] included the names of the bankruptcy judge, the trustee, and [debtor's] attorney, and presumably any of them could have helped [the creditor] obtain a copy of the plan or informed [the creditor] as to the plan's proposal concerning its claim. If [the creditor] had made any inquiry following receipt of the notice, it would have discovered that it needed to act to protect its interest.

*Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir. 1983); *see also In re Penn Central Trans. Co.*, 771 F.2d 762, 769 (3d Cir. 1985) (though creditors did not receive notice of the confirmation hearing, they, like Nazir, "1) received mail notice of the proof of claim program and the bar date, 2) chose whether or not to participate in the reorganization proceedings as to their other claims, and 3) sought relief from the district court long after the consummation of reorganization," and therefore "[u]nder these circumstances, we agree with the district court that effect must be given to the policy of finality in section 77 reorganizations and we find that [creditors] received all the notice that they were due under the Constitution").

In addition, Nazir's failure to act also left him (he claims) without knowledge of the administrative bar date, even though—had he attended the hearing to which he was directed or followed any of the subsequent events—he would have learned what it was.   Yet again, Nazir must take responsibility for his own inaction and cannot reasonably blame United.   *See Fogel v. Zell*, 221 F.3d 955, 964 (7th Cir. 2000) ("The general rule, moreover, is that the only knowledge required is knowledge of a critical stage of the proceeding *from which the bar date can be computed*, not of the bar date itself.").

Nazir's lengthy brief does not dispute two issues that are dispositive here.   *First*, there is no reported authority where a creditor receiving this extensive notice was nonetheless given a second chance to circumvent a reorganized debtor's discharge because he claimed he should have been given still more notice.   Every case cited by Nazir is completely inapposite, because

12

each of the creditors effected in those cases received no notice whatsoever of the debtor's pending bankruptcy.[6] As Nazir well knows, the situation here is far more nuanced, given the notice he did receive and his actual participation in (and payment from) United's bankruptcy. In fact, there is no reported authority (other than the Bankruptcy Court's opinion) holding this quantum of notice insufficient. Nor is there any reported authority (other than the Bankruptcy Court's opinion) permitting creditors to ignore notices that they actually receive, circumvent the Bankruptcy Court, and sue a debtor for conduct plainly discharged by 11 U.S.C. § 1141.

*Second*, Nazir essentially concedes that his demand for more notice is entirely form over substance. Nazir clearly knew—like most Americans, let alone most former United employees—that United had filed a Plan of Reorganization under which the company would emerge from Chapter 11 protection, and would effect his rights. He decided to do nothing about it, but instead wait a few months to try and circumvent the Bankruptcy Court entirely. United should not have to bear the brunt of Nazir's gamesmanship. The notice given to Nazir was not perfect, but it was sufficient to give him an opportunity to be heard. *See Mullane*, 339 U.S. at 311. The fact that Nazir did not take the opportunity given to him is his own fault.

---

[6] Nazir received a document notifying him of United's Disclosure Statement and Plan, both of which (if Nazir had bothered to look) would have made it clear that his claim would be barred post-confirmation unless it was raised in the Bankruptcy Court within a specific time period. That did not occur in any of the cases upon which Nazir relies. *See In re Big O Movers & Storage, Inc.*, 326 B.R. 434, 36 (Bankr. N.D. Ill. 2005) (claim not barred when the creditor "received no notice of this bankruptcy or of the Plan confirmation"); *In re Pettibone Corp.*, 162 B.R. 791 (Bankr. N.D. Ill. 1994) (creditors' claim was "not discharged by the confirmation order because it never received any notice of Pettibone's bankruptcy, the bankruptcy's relevance to it, any bar date, the motions to disallow claims, or the confirmation hearing"); *Reliable Elec. Co., Inc. v. Olson Const. Co.*, 726 F.2d 620, 622 (10th Cir. 1984) (release did not bind claimant where "no formal notice of any kind regarding the reorganization proceedings, or the time and manner of filing a claim, was ever given to Olson prior to the confirmation hearing"); *In re SNA Nut Co.*, 198 B.R. 541 (Bankr. N.D. Ill. 1996) (claim not barred when creditor had only publication notice of confirmation hearing).

**C.    Nazir's "Ambiguity" Defense Lacks Merit And Should Be Rejected.**

Because his legal arguments on statutory interpretation and notice lack merit, Nazir seeks refuge in the standard of review and an "ambiguity" defense. His argument is that trial courts typically have discretion over the type of sanction to enter after finding a party in contempt of court. Given that fact, and given that the Bankruptcy Court's interpretation of the applicable law permitted Nazir to file and prosecute a lawsuit in a California state court, Nazir argues that the question must be at least sufficiently "ambiguous" such as to preclude a contempt citation. (Nazir Br. at 10-12). Nazir's argument is incorrect.

The question of whether or not a party has acted in violation of a discharge injunction is an objective, wholly legal, question. *See Matter of Paeplow*, 972 F.2d 730, 733 (7th Cir. 1992) (whether act violates a debtor's discharge is a legal question reviewed de novo). If indeed Nazir violated United's discharge, he should be held in contempt. *See In re Pincombe*, 256 B.R. 774, 783 (Bankr. N.D. Ill. 2000) ("The appropriate standard to apply to determine whether a violation of the post-discharge injunction was willful is for the court to focus not on the subjective intent of the alleged violators, but rather on whether or not the conduct complied with the discharge order."). While (as Nazir states) the *amount* or *type* of any sanction for contempt (or whether in fact to impose any sanction at all) is clearly a matter within the Bankruptcy Court's discretion, the question of *whether* Nazir's conduct was permitted under the law is undoubtedly a legal one for the Court to review *de novo*. *See Paeplow*, 972 F.2d at 733.

United is not asking this Court to hold Nazir in contempt or to sanction him. Rather, it is asking the Court to review the Bankruptcy Court's rulings that: (1) Section 959(a) permitted Nazir to file a lawsuit against United, after United's Plan of Reorganization was confirmed, for purported employment discrimination that allegedly occurred "prior to the date of such confirmation"; and (2) Nazir received insufficient notice of United's Plan under *Mullane*. Both

such decisions must be reversed because they are legally incorrect, and the matter should be remanded to the Bankruptcy Court for it to consider the contempt question anew in light of the correct legal framework.

Regardless, the purported "ambiguity" of the law cannot save Nazir here.[7] There is no dispute that the "order" here was crystal clear that all claims against United that existed on the date of United's confirmation order would barred unless otherwise be treated in the Plan. Nor is there any question that the "administrative claim" that Nazir contends (and the Bankruptcy Court found) was preserved by the Plan had to be filed in accordance with its terms—in the Bankruptcy Court, within 30 days of the Plan's Effective Date. Nazir did not comply with those terms and, therefore, was in contempt of court unless he can locate an escape hatch. The only way around that clear, unambiguous law is the Section 959(a) argument that the Bankruptcy Court raised *sua sponte* (and was not even mentioned by Nazir's very experienced bankruptcy counsel), and the formalistic notice argument that obviously had no impact on what Nazir actually did, given his attorney's sworn statement that he did not believe the Plan applied to Nazir (for unknown reasons). This Court should reverse the Bankruptcy Court's findings, and remand for the Court to consider anew whether Nazir should be held in contempt and, if so, the appropriate sanction for his misconduct.

––––––––––––––––––––––

[7] In any event, Nazir's plea of ambiguity in the law is simply inaccurate, given that every single court prior to this case had come to the same uniform conclusion—that the employee of a bankruptcy company cannot bring a lawsuit for discrimination *after* the Plan is confirmed based on conduct occurring *before* the Plan was confirmed. *See infra* n.1.

**D.     United's Plan is Binding On All Creditors, And Cannot Be Collaterally Attacked Post-Confirmation.**

Knowing that his arguments lack merit, Nazir half-heartedly asserts what he calls a "cross-appeal."[8] In his so-called "cross-appeal," Nazir claims that even if he received adequate notice to be bound to United's Plan (which he did), and even if Section § 1141 of the Bankruptcy Code means what it says (which it does), he can still pursue discharged claims despite the confirmation of United's Plan. Nazir's argument is that United's Plan did not comply with other provisions of law as written, so he can collaterally attack it. Specifically, Nazir contends that United's Plan violated 28 U.S.C. 959(a) by requiring that any administrative claims against United be filed within a certain time period and be initially filed in the Bankruptcy Court. Thus, Nazir maintains, he need not comply with the Plan.

This argument is baseless and has been rejected by dozens of courts, including the Seventh Circuit—which has addressed and rejected Nazir's argument on multiple occasions. Nazir does not cite a single case even remotely on point,[9] and cannot do so by raising new

---

[8]     When he filed his "notice of cross-appeal," Nazir did not specify the basis for his cross-appeal, so United assumed that he was "appealing" the issue on which the Bankruptcy Court decided in United's favor—the fact that Nazir had no right to seek to impose liability on United for acts that occurred pre-petition. *See In re UAL Corp.,* 386 B.R. 701, 714 (Bankr. N.D. Ill. 2008) ("Nazir may not seek recovery in those [California state court] proceedings for any acts of United that took place before the date of United's bankruptcy filing."). Nazir's brief does not raise that issue at all on appeal. Accordingly, under Seventh Circuit law, Nazir's cross-appeal is improper and must be dismissed because it does not seek to change the underlying judgment entered by the Bankruptcy Court. *See In re UAL Corp.,* 411 F.3d 818, 820 (7th Cir. 2005) (holding that appellee's so-called 'cross-appeal' "is an improper cross-appeal, because it seeks no change in the judgment; it is hereby dismissed"). Given that Nazir's appeal is procedurally improper, is based on an argument that he never raised in the Bankruptcy Court, and is completely baseless, it is unclear why Nazir filed it at all.

[9]     The cases cited by Nazir are wholly inapposite. *In re Flor,* 166 B.R. 512 (Bankr. D. Conn. 1994), concerned whether a plan of reorganization should be confirmed in the first place, not whether a creditor could collaterally challenge a plan two years *after* confirmation. The other cases relied upon

(Continued...)

arguments in his reply brief.[10]  Moreover, in any event, even if this "cross-appeal" had merit

(which is does not), the argument is waived because it was never raised in the Bankruptcy Court.

     **First**, it is hornbook law that after confirmation of a Plan of Reorganization, whether or

not the Plan complied with other provisions of law is irrelevant.  Once a Plan is confirmed, it

binds all creditors—even if it should not have been confirmed in the first place.  *See In re*

*Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) ("[A] confirmed plan acts more or less like a court-

approved contract or consent decree that binds both the debtor and all the creditors.  Bringing the

various creditors' interests to the table once is difficult enough; permitting one of the creditors to

launch a later attack on a confirmed plan would destroy the balance of interests created in the

initial proceedings."); *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir., 2000) ("Our sister circuits

share our view that once a bankruptcy plan is confirmed, its terms are not subject to collateral

attack");[11] *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993) ("[T]he failure to raise an objection

at the confirmation hearing or to appeal from the order of confirmation should preclude attack on

---

by Nazir either address t*he initial confirmation of a plan*, not whether a creditor can ignore a confirmed plan because it purportedly should not have been confirmed in the first place, or are otherwise easily distinguishable.  *In re Koelbl*, 751 F.2d 137 (2d Cir. 1984) (confirming that to confirm a plan in the first place, it must comply with federal and state law); *In re Piper Aircraft Co.*, 244 F.3d 1289 (11th Cir. 2001) (second case not barred because it shared no common nucleus of fact with the Chapter 11 case).  Nazir's citation to *In re Landau Boat Co.*, 13 B.R. 899 (Bankr. W.D. Mo. 1981) is puzzling, as it has no conceivable relevance here.  Regardless, Nazir cites no cases in which creditors were deemed free to ignore confirmed Plans because they did not comply with applicable law at the time of confirmation.

[10] *Nelson v. LaCrosse County Dist. Atty*, 301 F.3d 820, 836 (7th Cir. 2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived.") (citing *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived .").

[11] Citing *In re Andersen*, 179 F.3d 1253, 1258-59 (10th Cir. 1999); *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315-17 (4th Cir. 1996); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1553 (11th Cir. 1990); *In re Szostek* ,886 F.2d 1405, 1413 (3d Cir.1989); *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983).

the plan or any provision therein as illegal in a subsequent proceeding.") (citation and internal quotation marks omitted); *Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 891 F.2d 159 (7th Cir. 1989) ("When the order of confirmation is entered, it binds the debtor and all creditors to the terms of the plan of reorganization.").

There is no question that confirmed Chapter 11 plans are sacred, and cannot be collaterally challenged. *See Holstein*, 987 F.2d at 1270 ("Post-confirmation amendments make an end run around these provisions and may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors."); *In re Cummings*, 297 B.R. 701, 708-09 (Bankr. N.D. Ill. 2003) (plan provision permitting the debtor to pay in installments was binding on creditor, even though it arguably violated the Bankruptcy Code); *In re Booth*, 289 B.R. 665, 668 (Bankr. N.D. Ill. 2003) ("[T]he propriety of the plan terms is not at issue now. No objection to the terms was made, the plan containing them was confirmed, and the terms of a confirmed Chapter 13 plan bind creditors, even if the confirmation was erroneous."); *In re Duggins*, 263 B.R. 233, 234 (Bankr. C.D. Ill. 2001) ("Even if the creditor disagrees with the treatment of its claim in a plan, once the plan is confirmed, the creditor is bound by its terms.").[12] This is well-settled law, and there is no way for Nazir to circumvent it:

---

[12] *See also Holstein*, 987 F.2d at 1270 ("We asked the parties whether any other court ever had allowed a claim to be increased, for any reason, after confirmation of a plan of reorganization. Neither side could find such a decision under the 1978 Code, or for that matter under the 1898 Act during its final 50 years."); *In re Williams*, 276 B.R. 899, 908 (C.D. Ill. 1999) ("Once the confirmation order is final and non-appealable, parties in interest, including creditors, are precluded from attacking the plan terms as illegal in a subsequent proceeding."); *In re Watkins*, 240 B.R. 735, 738 (Bankr. C.D. Ill. 1999) ("the creditor cannot complain after confirmation, even if the debtor's treatment of its claim is improper under the Bankruptcy code or applicable non-bankruptcy law"); *Litton Loan Serv. v. Ephraim*, 2008 WL 3949914, at *2 (N.D. Ill. Aug. 14, 2008) ("the Seventh Circuit consistently has rejected attempts by creditors and debtors to circumvent the terms of confirmed bankruptcy plans").

> [E]ven assuming that [the creditor] failed to receive written notice of the confirmation hearing, it is still not entitled to avoid the binding effects of the reorganization plan. . . .
>
> Creditors . . . must follow the administration of the bankruptcy estate to determine what aspects of the proceeding they may want to challenge.

*Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (citing *In re Sam*, 894 F.2d 778 (5th Cir. 1990); *see also In re Smith*, 2007 WL 1544366, at *4-5 (Bankr. E.D. Wis. May 29, 2007) (in *Pence*, "[t]he Seventh Circuit found that it was irrelevant whether or creditor had notice of the confirmation hearing" because any creditor is "not entitled to stick its head in the sand and pretend it would not lose any rights by participating in the proceedings").

*Second*, United strongly disputes that the provisions of its Plan were—as Nazir contends—violative of federal law. As described above, even if read in the manner proposed by Nazir, Section 959(a) specifically renders lawsuits falling under its auspices "subject to the general equity power of [the Bankruptcy Court] so far as the same may be necessary to the ends of justice." 28 U.S.C. § 959(a). This section affirmatively gives bankruptcy courts the power to bar, limit, or restrict lawsuits such as Nazir's in some circumstances—where they would embarrass, burden, delay, or impede a reorganization. *See Chicago Pacific Corp.*, 773 F.2d at 918. Nazir's lawsuit could easily fall within this bailiwick, given its intent to embarrass United and the scorched earth litigation strategy in which Nazir engaged. United's Plan merely required that Nazir's suit be filed in the Bankruptcy Court, and within a certain time period. Therefore, even if the legality of United's Plan was now open for question in a collateral challenge (which, as described above, it is not) United's Plan did not violate Section 959(a).

*Finally*, of course, Nazir never made this argument to the Bankruptcy Court. With good reason perhaps, given that the bankruptcy judge had several years prior published an opinion rejecting the argument Nazir now raises here for the first time. *See Booth*, 289 B.R. at 668. Had

Nazir raised the issue below, there is no question that the Bankruptcy Court would have rejected it as contrary to the binding precedent of the Seventh Circuit and flatly illogical. Regardless, under well-settled law, Nazir's argument is waived because he never presented it to the Bankruptcy Court at all. *In re Image Worldwide,* 139 F.3d 574, 582 (7th Cir. 1998) ("Arguments not presented to the bankruptcy court are waived on appeal."); *Matter of Hunter,* 970 F.2d 299, 306 (7th Cir. 1992) (same); *Matter of Weber,* 25 F.3d 413, 416 (7th Cir. 1994) ("that argument was never presented to the bankruptcy court, and [appellants] have therefore waived it").

## CONCLUSION

This Court should reverse the Bankruptcy Court's decision that permits Nazir to pursue claims against United "that arose prior to the date of" United's confirmation. *See* 11 U.S.C. § 1141(a)(1)(A). The Court should remand the Bankruptcy Court to consider contempt anew, and the amount of any sanctions, under the correct legal framework.

Chicago, Illinois
Dated: September 5, 2008

Respectfully submitted,

  /s/ Michael B. Slade
Marc Kieselstein, P.C. (ARDC No. 6199255)
David R. Seligman (ARDC No. 6238064)
Michael B. Slade (ARDC No. 6274231)
Erik W. Chalut (ARDC No. 6269251)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000 (telephone)
(312) 861-2200 (facsimile)

Counsel for the Reorganized Debtors

## CERTIFICATE OF SERVICE

I hereby certify that **UNITED'S REPLY BRIEF IN SUPPORT OF ITS APPEAL AND RESPONSE TO THE "CROSS-APPEAL" OF IFTIKHAR NAZIR AND PHIL HOROWITZ** was served through the ECF electronic filing system, and separately by e-mail, on September 5, 2008, upon:

> Harold Kaplan and Mark Hebbeln
> Foley & Lardner
> 321 N. Clark
> Chicago, IL  60654

_____ /s/ _____ Michael B. Slade

# EXHIBIT A





FILED
SAN MATEO COUNTY

FEB 0 6 2008

Clerk of the Superior Court
By _____
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

IFTIKHAR NAZIR,

    Plaintiff,

vs.

UNITED AIR LINES, INC, BERNARD
PETERSEN, and DOES 1 TO 50,

    Defendants.

_____/

Civil No. 458060

**ORDER ON MOTION FOR
SUMMARY JUDGMENT**

Dept:  2, Law & Motion
Hon. Marie S. Weiner

On January 23, 2008, Defendants' Motion for Summary Judgment and

alternatively Motion for Summary Adjudication of Issues came on for hearing before

Department 2 of this Court, the Law & Motion Department, before the Honorable Marie

S. Weiner.  Phil Horowitz and Moira McQuaid of the Law offices of Phil Horowitz

appeared on behalf of Plaintiff Irtikhar Nazir, and Ronald Arena of Littler Mendelson P.C.

appeared on behalf of Defendants United Air Lines Inc. and Bernard Petersen.

Upon due consideration of the briefs and evidence presented by the parties, the

oral argument of counsel, and having taken the matter under submission,

THE COURT FINDS as follows:

1

Despite its girth, Plaintiff's opposition to the separate statement of material facts is mostly verbiage, and utterly lacking in the identification and presentation of *evidence* demonstrating a disputed issue of fact.

Plaintiff initially filed a DFEH complaint in October 2005, which did *not* allege harassment. Plaintiff thereafter filed a second DFEH complaint on May 5, 2006 including a claim for harassment. All of the alleged acts of harassment occurred more than one year prior to May 5, 2006, and thus the claims are barred for failure to exhaust administrative remedies. No facts of harassment are set forth in the original DFEH complaint. There are no details or other particularized facts set forth in the second DFEH to demonstrate harassment, and thus Plaintiff has failed to exhaust his administrative remedies as a matter of law. Medix Ambulance Service, Inc. v. Superior Court (2002) 97 Cal.App.4th 109, 115, 118; Government Code §12960. Accordingly, the causes of action based upon harassment, specifically the first and second causes of action, would be subject to summary adjudication in favor of Defendants.

Plaintiff asserts that "Harassed 1991-2005" is referenced in the "pre-complaint" form he filled out for the DFEH on or about August 10, 2005 and in the "pre-complaint" form he filled out for the DFEH on or about September 13, 2005, and thus harassment claims should be allowed. (see Exhibit 2 to McQuaid Declaration, pages P7853-7856, P7837-7843, P7845-7847.) The pre-complaint also contains the single broad statement: "The discrimination and harassment have been non-stop since 1991 to the day my services were terminated." Despite the lengthy statement of facts presented by Plaintiff in the pre-complaints, there is no details of any "harassment" – as distinguished from the facts presented of discrimination and retaliation. Indeed, Plaintiff followed up with a lengthy

letter to DFEH dated December 12, 2005 (P78677869) and another dated December 26, 2005 (P7805-7810). Yet the contain no facts of harassment against Plaintiff. On the contrary, the focus of the facts is upon allegations of discrimination and retaliation. The only reference to "harassment" is regarding the claims of harassment *against* Plaintiff for his conduct with the female custodial supervisor.

On the other hand, Plaintiff was very specific about issues raised on his DFEH claim and detailed information as to persons who were potential witnesses, including names, telephone numbers, and what facts they could attest to.

In response the DFEH actual *proceeded with an investigation* of Plaintiff's claims. (See McQuaid Decl., Ex. 2, P7872-7878.) That investigation stopped because Plaintiff demanded a "right to sue" letter so as to bring a lawsuit instead. (P7874-7878.)

This distinguishes this case from the decision in Baker v. Children's Hospital Medical Center (1989) 209 Cal.App.3d 1057, and Okoli v. Lockheed Technical Operations Co. (1995) 36 Cal.App.4th 1607. Those cases hold that the scope of the complaint is not limited by the charge stated in the administrative complaint "but rather by the scope of the investigation which can reasonably be expected to grow out of the charge" made. Here, Plaintiff's complaints to DFEH *were actually investigated*. Yet they found no basis for any violation of FEHA. Thus, we need not speculate as to whether the administrative investigation would have revealed facts of harassment *within one year* of filing of the original DFEH verified complaint form -- because DFEH *didn't* find any.

In addition, Government Code Section 12960(b) is explicit in stating that a verified DFEH complaint is a prerequisite to bringing a lawsuit on that claim, otherwise there is a failure to exhaust administrative remedies. The pre-complaint is not a verified complaint,

3

and the verified complaint of Plaintiff did not contain an allegation of harassment, until the

filing of the *second* complaint in May 2005 – which was more than one year after the

alleged harassment stopped.

Further, Section 12960(b) expressly requires particularity of the facts of the claim

allegedly in violation of FEHA. See also, <u>Cole v. Antelope Valley Union High School</u>

<u>District</u> (1996) 47 Cal.App.4th 1505, 1511, 1513, 1515; <u>martin v. Lockheed Missles &</u>

<u>Space Co.</u> (1994) 29 Cal.App.4th 1718, 1724. Plaintiff presented no particularity of facts

as to any alleged harassment in his pre-complaint, nor in his complaint.

As there is no common law claim for "harassment" independent of FEHA,

Defendants are entitled to summary adjudication on the first and second causes of action

for harassment for failure to exhaust administrative remedies.

As to the remaining claims, Defendants must establish a prima facie case that they

are entitled to judgment as a matter of law by showing some legitimate nondiscriminatory

reason for the action taken against the employee. <u>Caldwell v. Paramount Unified School</u>

<u>Dist.</u> (1995) 41 Cal.App.4th 189, 202-203. If the employer meets this burden, the

employee must provide substantial responsive evidence that the employer's showing was

untrue or pretextual, thereby raising an inference of discrimination. <u>Hersant v. California</u>

<u>Protective Services</u> (1997) 57 Cal.App.4th 997, 1004-1005. The employee meets this

burden by providing substantial evidence that the reasons were pretextual or that the

employer acted with discriminatory intent, or both. <u>University of So. Calif. v. Superior</u>

<u>Court</u> (1990) 222 Cal.App.3d 1028, 1036.

As to Plaintiff's claims of wrongful termination based upon discrimination (race,

religion, national origin), specifically the third and fourth causes of action, Defendants

have presented a legitimate non-discriminatory basis for terminating Plaintiff. Specifically

his gender harassment and unwanted physical contact with the woman supervising the

custodian services. (See Undisputed Material Facts Nos. 28-57.)  The burden then shifted

to Plaintiff to present specific detailed factual evidence demonstrating that the reason for

termination was pretext and that the actual reason was discriminatory.  Yet, Plaintiff failed

to present any evidence controverting Material Undisputed Facts Nos. 28-57.  Indeed it is

undisputed that Plaintiff was previously subject to employment reprimands prior to the

incident causing his termination.  Instead, Plaintiff seeks to emphasize the facts he

presented in support of his claim of *harassment* – which is barred by failure to exhaust

administrative remedies.  Most of the allegedly discriminatory conduct (by co-workers)

occurred many years ago, and thus is remote in time from Plaintiff's termination.  Further,

it is Defendant Petersen who gave Plaintiff a *promotion* to supervisor.

Defendants argue the "same actor doctrine", i.e. that the fact that Petersen

promoted Plaintiff to supervisor on 7/19/01, notwithstanding Plaintiff's color, national

origin, or religion (or for that matter his prior complaints of harassment), negates any

inference that Peterson's decision to terminate Plaintiff was motivated by discriminatory

animus.  See e.g. Horn v. Cushman & Wakefield Western, Inc. (1999) 72 Cal.App.4th 798,

809.  There is no dispute that Plaintiff accepted the supervisor position on 7/19/01

(Plaintiff's Declaration at ¶ 143) and that Plaintiff was terminated on 5/9/05.  Thus, there is

no dispute that Plaintiff was terminated less than four years after he was promoted.  See

West v. Bechtel Corp. (2002) 96 Cal.App.4th 966, 980-981 (Court of Appeal noted that

the passage of time would eventually attenuate this "same-actor presumption", but found

that the presumption still applied in that case even though five years had elapsed between the hiring and the firing at issue.)

Plaintiff's Declaration seeks to rebut the "same actor" presumption by providing facts that infer that Petersen was hostile to the promotion and essentially forced to accept Plaintiff. (Plaintiff's Declaration, ¶¶129-138.)  However, the only the evidence that Plaintiff offers in support of this hypothesis is that Petersen "said to me in a cold and hostile tone, `the job is yours if you want it'" and that Petersen did not congratulate Plaintiff, encourage Plaintiff or say anything positive to Plaintiff. (Plaintiff's Declaration, ¶138) and that the head of Human Resources appeared to be involved in the decision-making process. (Plaintiff's Declaration at ¶¶129-138.)  This evidence is not sufficient to rebut the same actor presumption, i.e. that Petersen's decision to terminate Plaintiff within five years of having promoted him to supervisor is presumed nondiscriminatory.

As to Plaintiff's claims of retaliation, alleged as the fifth, sixth, and ninth causes of action, Defendants have made a prima facie showing of a legitimate non-discriminatory reason for terminating Plaintiff, which Plaintiff has failed to rebut by a prima facie showing of pretext and that the real reason was in retaliation.  Thus, Defendants would be entitled to summary adjudication of these claims.

As to Plaintiff's claim for failure to prevent, alleged as the seventh cause of action, Plaintiff has failed to demonstrate any actionable claims for discrimination or harassment, and thus a claim for failure to prevent such must fail.  Thus, Defendants would be entitled to summary adjudication of these claims.

As to Plaintiff's claim of wrongful termination due to disability discrimination, alleged as the eighth cause of action, Defendants have made a prima facie showing of a

6

legitimate non-discriminatory reason for terminating Plaintiff, which Plaintiff has failed to rebut by a prima facie showing of pretext and that the real reason was due to disability. Thus, Defendants would be entitled to summary adjudication of these claims.

As to Plaintiff's tenth cause of action for breach of contract and eleventh cause of action for breach of the covenant of good faith and fair dealing, the evidence is undisputed that Plaintiff was an "at will" employee, and no evidence is presented to demonstrate that Plaintiff was subject to terms of employment other than "at will". Accordingly, as a matter of law, the tenth and eleventh causes of action would be subject to summary adjudication in favor of Defendants. Otherwise the motion is MOOT as these two claims were voluntarily dismissed on December 7, 2007.

As to Plaintiff's claim that Defendants tricked him into eating pork, knowing that it was against his religion, alleged as the twelfth cause of action for fraud and thirteenth cause of action for battery. The only damages claims are for physical and emotional injuries and distress. There is no evidence that Defendants made representations as to the contents of the food, and no evidence that Petersen knew it contained pork, and the only evidence that it was pork is hearsay allegedly from the statement of an unidentified chef. (Original Undisputed Material Facts Nos. 74 and 75.) Accordingly, the twelfth and thirteenth causes of action would be subject to summary adjudication in favor of Defendants.

As for Plaintiff's fourteenth cause of action for intentional infliction of emotional distress, Plaintiff stopped working for Defendants upon his termination on May 9, 2005. The Complaint was filed on July 7, 2006. (UMF No. 76.) Defendants' Fact No. 77 establishes that the only events occurring within two years (the statute of limitations) were

7

(a) a party thrown at United in which pork was served, (b) Plaintiff received a negative performance review from Petersen, and (3) Plaintiff's office door was glued shut. None of these facts, individually or in combination are sufficiently outrageous to establish a claim for intentional infliction of emotional distress, and Defendants would be entitled to summary adjudication of the fourteenth cause of action.

Alternatively, this Court finds that the 1,894 page Response to Defendants' Separate Statement of Undisputed Fact fails to conform to the requirements of C.C.P. §437c(b)(3) and fails to follow the format requirements of CRC Rule 3.1350(f) and (h), and in fact, as the Plaintiff's Memorandum of Points and Authorities concedes, was intended to constitute in large part a second Memorandum of Points and Authorities that grossly exceeds the 20 page limitation of CRC Rule 3.1113(d) and was filed without leave of court. The court further finds that the Opposition Separate Statement, which purports to dispute all but seven of the Undisputed Facts offered by Defendants, was designed in a manner calculated to make it time-consuming and difficult for the Court to ascertain which purportedly disputed facts were actually controverted by admissible evidence. Thus, the Court would be at liberty to strike or disregard Plaintiff's opposition in its entirety.

IT IS HEREBY ORDERED as follows:

1.   Defendants' motion for summary judgment is GRANTED.

2.   Plaintiff's 47 evidentiary objections are OVERRULED.

3.   Defendants' evidentiary objection No. 27 is OVERRULED, and the remainder of the Defendants' evidentiary objections are SUSTAINED.

DATED:      February 6, 2008

_____
HON. MARIE S. WEINER
JUDGE OF THE SUPERIOR COURT

8